[No. S126182. July 19, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
KEVIN MICHAEL BLACK, Defendant and Appellant.

804

**COUNSEL**

Eileen S. Kotler, under appointment by the Supreme Court, for Defendant and Appellant.

Deborah A. Kwast, Public Defender (Orange), Thomas Havlena, Chief Deputy Public Defender, Kevin J. Phillips, Assistant Public Defender, and Martin E. Schwarz, Deputy Public Defender, for Orange County Public Defender's Office as Amicus Curiae on behalf of Defendant and Appellant.

John T. Philipsborn and Charles D. Weisselberg for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Manuel M. Medeiros, State Solicitor General, Donald E. de Nicola, Deputy State Solicitor General, Robert R. Anderson and Dane R. Gillette, Chief Assistant Attorneys General, Mary Jo Graves and Pamela C. Hamanaka, Assistant Attorneys General, J. Robert Jibson, Judy Kaida, Jaime L. Fuster, Kristofer Jorstad and Lawrence M. Daniels, Deputy Attorneys General, for Plaintiff and Respondent.

David R. LaBahn, George Kennedy, James P. Fox and Martin Murray for California District Attorneys Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—This case is before us for a second time, after remand from the United States Supreme Court for reconsideration in light of that court's very recent decision in *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] (*Cunningham*). In *Cunningham*, the United States Supreme Court, disagreeing with this court's initial decision in this matter (*People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534] (*Black I*)), held that California's determinate sentencing law (DSL) violates a defendant's federal constitutional right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution by assigning to the trial judge, rather than the jury, the authority to make the factual findings that subject a defendant to the possibility of an upper term sentence.

In considering defendant's challenge to the validity of his upper term sentence, imposed prior to *Cunningham*, we address a number of issues that arise in the wake of the *Cunningham* decision. (1) Did defendant's failure in the trial court to request a jury trial on aggravating circumstances forfeit his right to challenge on appeal the imposition of the upper term sentence? (2) If defendant did not forfeit the issue, did imposition of the upper term in the present case violate his right to jury trial and, if so, was the error prejudicial? (3) Does the reasoning of the line of United States Supreme Court decisions culminating in *Cunningham* require that a jury, rather than the trial court, find the facts that support imposition of consecutive sentences for multiple offenses?

Concluding that defendant did not forfeit the issue by failing to object to his sentence on Sixth Amendment grounds in the trial court, we hold that

imposition of an upper term sentence did not violate defendant's right to a jury trial, because at least one aggravating circumstance was established by means that satisfy Sixth Amendment requirements and thus made him eligible for the upper term. Finally, consistent with this court's determination in *Black I*, we hold that neither *Cunningham* nor the relevant prior high court decisions apply to the imposition of consecutive terms.

## I.

In *Black I, supra*, 35 Cal.4th 1238, we summarized the relevant facts in this case as follows: "Defendant was charged with one count of continuous sexual abuse of a child (Pen. Code, § 288.5),[1] involving victim T.R., and two counts of lewd and lascivious conduct with a child (§ 288, subd. (a)), involving victims A.T. and H.T. The information alleged, as to the first count, that defendant committed the offense by use of 'force, violence, duress, menace, and fear of immediate and unlawful bodily injury,' and that defendant had substantial sexual conduct with a victim under the age of 14 years, allegations that would affect his eligibility for probation or a suspended sentence. (§ 1203.066, subd. (a)(1), (8).) The information also alleged that defendant committed specified sexual acts with more than one victim, an allegation that, if found true, would subject defendant to a term of imprisonment of 15 years to life on each of the two counts of lewd and lascivious conduct with a child. (§ 667.61, subds. (b), (c), (d).)

"At trial, defendant's stepdaughter T.R. testified that defendant had sexual intercourse with her on several occasions when she was eight or nine years of age. Sometimes, when her mother was working, defendant would take care of her. The incidents occurred at home, in her bedroom or in the bedroom her mother shared with defendant. During some of the incidents, defendant held T.R.'s arms down when she struggled, so that she could not get away. Defendant told her not to tell anyone about what happened; if she did, he would tell her mother a big lie to get her in trouble.

"Two of T.R.'s friends (A.T. and H.T.) testified that one day when they were playing with T.R. at her house, defendant told them they could do whatever they wanted, including taking off their clothes. Encouraged by T.R., the girls took off some of their clothing. At defendant's urging, the girls sat in his lap and he rubbed their bare thighs.

"The defense contended that the acts as testified to by defendant's stepdaughter had not occurred, that she made up the allegations because she was upset by the troubled relationship between her mother and defendant, and that

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

she actually had been molested by a family friend whom she was trying to protect. The defense also contended that defendant's conduct with his stepdaughter's friends was innocent, and that by having them sit in his lap he was merely trying to settle them down. The jury found defendant guilty on all counts and found all of the special allegations true.

"The offense of continuous sexual abuse of a child is punishable by a term of six, 12, or 16 years' imprisonment. (§ 288.5, subd. (a).) The court sentenced defendant to the upper term of 16 years for that offense, selecting this term based on 'the nature, seriousness, and circumstances of the crime.' The court noted that defendant had forced the victim to have sexual intercourse with him on numerous occasions, that the victim was particularly vulnerable to him as his stepdaughter, that he had abused a position of trust and confidence, and that he had inflicted emotional and physical injury on the victim.

"The court imposed two indeterminate terms of 15 years to life on the lewd conduct counts, consecutive to each other and to the 16-year determinate term, for a total term of imprisonment of 46 years to life. In explaining its reasons for imposing consecutive terms, the court noted that count 2 involved a separate victim (A.T.) from count 1 (T.R.) and occurred on a separate occasion. In addition, count 2 involved a breach of confidence, because the victim had been left in defendant's care. As to count 3, the court stated that offense also involved a different victim (H.T.), and that a consecutive sentence was appropriate because the offense was serious and of a predatory nature, in that defendant had preyed on both his stepdaughter and her friends." (*Black I, supra,* 35 Cal.4th at pp. 1244–1245, fn. omitted.)

Three weeks after the Court of Appeal affirmed the judgment and sentence imposed by the trial court in this case, the United States Supreme Court issued its decision in *Blakely v. Washington* (2004) 542 U.S. 296, 300 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*), holding that a criminal defendant's Sixth Amendment right to jury trial was violated in a case in which a Washington state trial court imposed "an exceptional sentence" beyond the "standard range" under Washington's Sentencing Reform Act, based upon facts neither proven to a jury beyond a reasonable doubt, nor admitted by the defendant. We granted review in the present case to consider the effect of *Blakely* on the validity of California's DSL.

While this matter was pending before our court, the United States Supreme Court rendered its decision in *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738] (*Booker*), addressing a challenge to the federal sentencing laws based upon *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*) and *Blakely*. After

soliciting supplemental briefing on the effect of the *Booker* decision on the issues before us in *Black I* and considering the contentions made in the parties' briefs and oral argument, we concluded in *Black I* that "the judicial factfinding that occurs when a judge exercises discretion to impose an upper term sentence or consecutive terms under California law does not implicate a defendant's Sixth Amendment right to a jury trial." (*Black I, supra,* 35 Cal.4th at p. 1244.)

After our decision in *Black I*, defendant filed a petition for writ of certiorari in the United States Supreme Court. The high court addressed the issue of the constitutional validity of the California DSL in *Cunningham, supra,* 549 U.S. 270 [127 S.Ct. 856]. As noted above, in *Cunningham* the United States Supreme Court concluded, contrary to this court's determination in *Black I*, that "[b]ecause the DSL authorizes the judge, not the jury, to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent." (*Cunningham, supra,* 549 U.S. at p. ___ [127 S.Ct. at p. 871], fn. omitted.) Subsequently, the high court granted the petition for writ of certiorari in the present case and remanded it to this court for reconsideration in light of *Cunningham*.

## II.

As the high court observed in *Cunningham*, "California's DSL, and the rules governing its application, direct the sentencing court to start with the middle term, and to move from that term only when the court finds itself and places on the record facts—whether related to the offense or the offender—beyond the elements of the charged offense." (*Cunningham, supra,* 549 U.S. at p. ___ [127 S.Ct. at p. 863].) Under the DSL, three terms of imprisonment are specified by statute for most offenses. The trial court's discretion in selecting among these options is limited by section 1170, subdivision (b), which directs that "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime."[2] The statute permits the court, when imposing the upper term, to rely on aggravating facts that have not been found true by the jury. The facts relevant to this sentencing choice are to be determined by the court, which "shall set forth on the record the facts and reasons for imposing the upper or lower term." (§ 1170, subd. (b).) The court may not consider any fact that is an essential element of the crime itself (Cal. Rules of Court, rule 4.420(d)) and may not

---

[2] In response to *Cunningham*, our Legislature recently amended the DSL effective March 30, 2007. (Stats. 2007, ch. 3.) References to section 1170 are to the law as it read prior to those amendments.

In response to the Legislature's amendment of the DSL, the Judicial Council amended the sentencing rules effective May 23, 2007. References to the California Rules of Court are to the rules as they read prior to those amendments.

consider a fact charged and found true as an enhancement unless it strikes the punishment for that enhancement. (§ 1170, subd. (b); Cal. Rules of Court, rule 4.420(c).)

 *Cunningham* concluded that the DSL violates a defendant's right to jury trial because "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham, supra,* 549 U.S. at p. ___ [127 S.Ct. at pp. 863–864].) In its seminal decision in *Apprendi, supra,* 530 U.S. at page 490, the high court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely,* the court clarified that the prescribed " 'statutory maximum' " for purposes of the right to a jury trial is not necessarily the maximum penalty stated in statute for the crime; rather, it is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (*Blakely, supra,* 542 U.S. at p. 303.)

In *Black I,* we reasoned that because the sentencing "judge is free to base an upper term sentence on any aggravating factor that the judge deems significant," as long as the factor is " 'reasonably related to the decision being made' " (Cal. Rules of Court, rule 4.408(a)), the "requirement that the middle term be imposed unless an aggravating factor is found preserves the traditional broad range of judicial sentencing discretion. . . . [T]he requirement that an aggravating factor exist is merely a requirement that the decision to impose the upper term be *reasonable.*" (*Black I, supra,* 35 Cal.4th at p. 1255, fn. omitted.) Relying upon the circumstance that in *Booker* a majority of the high court approved a modification of the federal sentencing scheme that incorporated a similar level of limited judicial discretion, we concluded that the upper term was the relevant " 'statutory maximum' for purposes of Sixth Amendment analysis." (*Black I,* at p. 1257.)

In *Cunningham,* however, the high court disagreed with our conclusion in *Black I,* finding determinative the circumstances that "[u]nder California's DSL, an upper term sentence may be imposed only when the trial judge finds an aggravating circumstance," and that an "element of the . . . offense" determined by the jury verdict "does not qualify" as an aggravating circumstance. (*Cunningham, supra,* 549 U.S. at p. ___ [127 S.Ct. at p. 868].) "Instead, aggravating circumstances depend on facts found discretely and solely by the judge. In accord with *Blakely,* therefore, the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." (*Ibid.*) Thus, the high court concluded that "[b]ecause the DSL

allocates to judges sole authority to find facts permitting the imposition of an upper term sentence, the system violates the Sixth Amendment." (*Id.* at p. ___ [127 S.Ct. at p. 870].)

Below, we apply the rule established in *Cunningham* and its predecessors to the facts of the present case.

## III.

As a preliminary matter, we consider the Attorney General's argument that defendant has forfeited his right to raise the jury-trial issue, because he did not object to the sentencing procedure in the trial court. Although the trial court's imposition of sentence in this case preceded not only the recent decision in *Cunningham* but also the high court's decision in *Blakely, supra,* 542 U.S. 296, the Attorney General contends that defendant's failure to object should not be excused because he, like the defendant in *Blakely*, could have argued that he was entitled to a jury trial on sentencing issues based upon the high court's earlier decision in *Apprendi*.

■ We long have applied the rule that although challenges to procedures or to the admission of evidence normally are forfeited unless timely raised in the trial court, "this is not so when the pertinent law later changed so unforeseeably that it is unreasonable to expect trial counsel to have anticipated the change." (*People v. Turner* (1990) 50 Cal.3d 668, 703 [268 Cal.Rptr. 706, 789 P.2d 887] (*Turner*); see *In re Gladys R.* (1970) 1 Cal.3d 855, 861 [83 Cal.Rptr. 671, 464 P.2d 127]; *People v. De Santiago* (1969) 71 Cal.2d 18, 23 [76 Cal.Rptr. 809, 453 P.2d 353] (*De Santiago*); *People v. Kitchens* (1956) 46 Cal.2d 260, 263 [294 P.2d 17] (*Kitchens*).) In *Turner*, for example, we considered the defendant's claim that his prior convictions should not have been admitted for the purpose of impeachment even though no objection had been made in the trial court; "indeed, defense counsel himself had elicited the existence and nature of the prior convictions during his direct examination." (*Turner, supra,* 50 Cal.3d at p. 703.) As it did at the time of the trial in *Turner*, article I, section 28, subdivision (f) of the California Constitution provides that prior felony convictions could be used "without limitation for purposes of impeachment" in a criminal trial. (Added by Prop. 8, as approved by the voters June 8, 1982.) However, after the trial in *Turner*, we held that notwithstanding this constitutional provision, a trial court retains discretion under Evidence Code section 352 to preclude the use of a prior conviction for the purpose of impeachment if the probative value of the conviction is outweighed by its prejudicial effect. (*People v. Castro* (1985) 38 Cal.3d 301 [211 Cal.Rptr. 719, 696 P.2d 111].)

In *Turner*, however, we noted that it was "widely assumed" the newly added language of article I, section 28, subdivision (f) of the California

Constitution eliminated all objections to the admissibility of prior felony convictions for impeachment, and that our decision in *Castro* contradicted most of the appellate authority on this point. (*Turner, supra,* 50 Cal.3d at pp. 703–704.) Under these circumstances, we concluded that defense counsel "cannot be saddled with the burden of anticipating such an abrupt change in the law." (*Id.* at p. 704, fn. omitted; see also *People v. Chavez* (1980) 26 Cal.3d 334, 350, fn. 5 [161 Cal.Rptr. 762, 605 P.2d 401] [counsel's failure to object to the admissibility of prior inconsistent statements did not forfeit a claim of error under the confrontation clause of the California Constitution, because a number of appellate court cases had upheld the admissibility of such statements in the face of similar challenges]; *In re Gladys R., supra,* 1 Cal.3d at p. 861 [failure to object to trial court's reading of social services report prior to the jurisdictional hearing in a juvenile court proceeding did not forfeit issue for purposes of appeal, because an appellate decision subsequently issued interpreted the controlling statutes "in a manner contrary to the apparently prevalent contemporaneous interpretation"]; *Kitchens, supra,* 46 Cal.2d at p. 263 [counsel's failure to object to illegally obtained evidence did not forfeit issue for appeal, because the opinion that rendered illegally obtained evidence inadmissible was filed after the trial in question].)

■ In determining whether the significance of a change in the law excuses counsel's failure to object at trial, we consider the "state of the law as it would have appeared to competent and knowledgeable counsel at the time of the trial." (*De Santiago, supra,* 71 Cal.2d at p. 23.) At the time of defendant's trial, no California case supported the proposition that *Apprendi* required a jury trial on aggravating circumstances, which, under the DSL, were to be decided by the judge. *Apprendi* itself stated that its holding did not prohibit a judge from making findings on a sentencing factor, which it described as "a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense." (*Apprendi, supra,* 530 U.S. at p. 494, fn. 19.) That description reasonably appears to encompass the aggravating and mitigating circumstances that a judge must consider in selecting among the three terms authorized under California's DSL.

■ Prior to *Blakely,* it was widely assumed that for the purposes of the rule established in *Apprendi,* the maximum term authorized by the jury's verdict was the upper term. In a case decided after *Apprendi,* we recognized that *Apprendi* implicitly overruled our holding in *People v. Wims* (1995) 10 Cal.4th 293 [41 Cal.Rptr.2d 241, 895 P.2d 77] that the failure to instruct the jury on an element of a sentencing enhancement violated state law, but not the federal Constitution. (*People v. Sengpadychith* (2001) 26 Cal.4th 316, 326 [109 Cal.Rptr.2d 851, 27 P.3d 739].) *Apprendi* was assumed to apply to the

determination of sentence enhancements, but not to aggravating circumstances or other sentencing decisions. We agree with the assessment of a federal court that "[w]ith its clarification of a defendant's Sixth Amendment rights, the *Blakely* court worked a sea change in the body of sentencing law." (*U.S. v. Ameline* (9th Cir. 2004) 376 F.3d 967, 973, fn. omitted.) The circumstance that some attorneys may have had the foresight to raise this issue does not mean that competent and knowledgeable counsel reasonably could have been expected to have anticipated the high court's decision in *Blakely.* We conclude that, at least with respect to sentencing proceedings similar to the one here at issue, preceding the *Blakely* decision, a claim of sentencing error premised upon the principles established in *Blakely* and *Cunningham* is not forfeited on appeal by counsel's failure to object at trial.

## IV.

■ It is important to recognize that, under the line of high court decisions beginning with *Apprendi, supra,* 530 U.S. 466, and culminating in *Cunningham, supra,* 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856], the constitutional requirement of a jury trial and proof beyond a reasonable doubt applies only to a fact that is "legally essential to the punishment" (*Blakely, supra,* 542 U.S. at p. 313), that is, to "any fact that exposes a defendant to a greater potential sentence" than is authorized by the jury's verdict alone (*Cunningham, supra,* 549 U.S. at p. ___ [127 S.Ct. at p. 863]). "The Sixth Amendment question, the Court has said, is whether the law *forbids* a judge to increase defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede)." (*Rita v. United States* (2007) 551 U.S. ___, ___ [168 L.Ed.2d 203, 215, 127 S.Ct. 2456, 2466]). For this reason, we agree with the Attorney General's contention that as long as a single aggravating circumstance that renders a defendant *eligible* for the upper term sentence has been established in accordance with the requirements of *Apprendi* and its progeny, any additional factfinding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to jury trial.

■ *Apprendi* examined the right to jury trial in criminal cases as it existed at common law, recognizing a "historic link between verdict and judgment and the consistent limitation on judges' discretion to operate within the limits of the legal penalties." (*Apprendi, supra,* 530 U.S. at p. 482.) At the same time, *Apprendi* also observed that "nothing in this history suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment *within the range* prescribed by statute." (*Id.* at p. 481.) The high court noted that judges long have exercised discretion in sentencing within the statutory limits. (*Ibid.*) Thereafter, in *Blakely,* the court explicitly recognized the legitimate role of "judicial factfinding" in indeterminate sentencing,

in which the judge may "implicitly rule on those facts he deems important to the exercise of his sentencing discretion." (*Blakely, supra,* 542 U.S. at p. 309.)

 Accordingly, so long as a defendant is *eligible* for the upper term by virtue of facts that have been established consistently with Sixth Amendment principles, the federal Constitution permits the trial court to rely upon any number of aggravating circumstances in exercising its discretion to select the appropriate term by balancing aggravating and mitigating circumstances, regardless of whether the facts underlying those circumstances have been found to be true by a jury. "Judicial factfinding in the course of selecting a sentence within the authorized range does not implicate the indictment, jury-trial, and reasonable-doubt components of the Fifth and Sixth Amendments." (*Harris v. United States* (2002) 536 U.S. 545, 558 [153 L.Ed.2d 524, 122 S.Ct. 2406].) Facts considered by trial courts in exercising their discretion within the statutory range of punishment authorized for a crime "have been the traditional domain of judges; they have not been alleged in the indictment or proved beyond a reasonable doubt. There is no reason to believe that those who framed the Fifth and Sixth Amendments would have thought of them as the elements of the crime." (*Id.* at p. 560; see *Rita v. United States, supra,* 551 U.S. at p. ___ [168 L.Ed.2d at p. 215, 127 S.Ct. at pp. 2465–2466] [the "Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence"].)

 The facts upon which the trial court relies in exercising discretion to select among the terms available for a particular offense "do not pertain to whether the defendant has a legal *right* to a lesser sentence—and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." (*Blakely, supra,* 542 U.S. at p. 309.) Under California's determinate sentencing system, the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term. (*People v. Osband* (1996) 13 Cal.4th 622, 728 [55 Cal.Rptr.2d 26, 919 P.2d 640].) Therefore, if one aggravating circumstance has been established in accordance with the constitutional requirements set forth in *Blakely,* the defendant is not "legally entitled" to the middle term sentence, and the upper term sentence is the "statutory maximum."[3]

---

[3] Addressing state sentencing schemes similar, for purposes of Sixth Amendment analysis, to California's DSL, the Supreme Courts of Arizona and Colorado have reached the same conclusion. (*State v. Martinez* (2005) 210 Ariz. 578 [115 P.3d 618, 625], cert. den. *sub nom. Martinez v. Arizona* (2005) 546 U.S. 1044 [163 L.Ed.2d 592, 126 S.Ct. 762] [if a jury finds or the defendant admits a single aggravating factor, the sentencing judge may consider additional factors relevant to the imposition of sentence]; *Lopez v. People* (Colo. 2005) 113 P.3d 713, 731, cert. den. *sub nom. Lopez v. Colorado* (2005) 546 U.S. 1017 [163 L.Ed.2d 529, 126 S.Ct.

Defendant contends the high court's decisions afford him the right to jury trial on all aggravating circumstances that may be considered by the trial court, even if one aggravating circumstance has been established in accordance with *Blakely*. He argues that the existence of a single aggravating circumstance does not make a defendant eligible for the upper term under section 1170, because "[s]election of the upper term is justified only if, after a consideration of all the relevant facts, the circumstances in aggravation outweigh the circumstances in mitigation." (Cal. Rules of Court, rule 4.420(b).) Although a single aggravating circumstance may warrant an upper term in some cases, defendant argues, a court cannot impose the upper term unless it determines that any aggravating circumstances are of sufficient weight to justify the upper term and outweigh any mitigating circumstances, and unless the court makes this determination by considering all of the aggravating circumstances. Defendant notes that in *Apprendi*, the high court stated that "[o]ther than the fact of a prior conviction, *any* fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra,* 530 U.S. at p. 490, italics added.) Thus, defendant argues, if only one of several aggravating circumstances considered by the trial court has been established pursuant to Sixth Amendment requirements, and the upper term sentence is selected, the court has imposed "punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' [citation] and the judge exceeds his proper authority." (*Blakely, supra,* 542 U.S. at p. 304.)[4]

Defendant's argument is unsound. As discussed above, *Cunningham* and its antecedents do not prohibit a judge from making the factual findings that lead to the selection of a particular sentence. Justice Stevens, who authored the

---

654] [one constitutionally complying aggravating circumstance is sufficient to support an aggravated sentence even if the sentencing judge considered other circumstances].)

[4] We do not understand defendant to contend that he is entitled to a jury trial on the question of whether aggravating circumstances outweigh mitigating circumstances, although that conclusion arguably is a logical extension of his argument. Such an argument is not supported by the high court's precedents, which require a jury trial only on a "fact" that increases the punishment for a crime beyond the statutory maximum. (See, e.g., *Apprendi, supra,* 530 U.S. at p. 490.) The trial court's evaluation of the relative weight of aggravating and mitigating circumstances is not equivalent to a factual finding. As we have explained in the context of capital sentencing, "the word 'weighing' is a metaphor for a process which by nature is incapable of precise description." (*People v. Brown* (1985) 40 Cal.3d 512, 541 [230 Cal.Rptr. 834, 726 P.2d 516].) Thus, in a capital case, "the jury, by weighing the various factors, simply determines under the relevant evidence which penalty is appropriate in the particular case." (*Ibid.*) Likewise, in noncapital sentencing, the weighing of aggravating and mitigating circumstances simply is a process by which the trial court selects the most appropriate sentence in a particular case. "[T]he sentencing function is inherently moral and normative, not factual; the sentencer's power and discretion . . . is to decide the appropriate penalty for the particular offense and offender under all the relevant circumstances." (*People v. Rodriguez* (1986) 42 Cal.3d 730, 779 [230 Cal.Rptr. 667, 726 P.2d 113].)

part of the high court's majority opinion in *Booker* that held the federal sentencing guidelines unconstitutional, emphasized the relevant principles in his dissenting opinion in that same case, in which he took issue with a separate opinion authored by Justice Breyer for a different majority of the court, addressing the constitutional problem by rendering the federal sentencing guidelines discretionary. In his dissent, Justice Stevens (joined by Justice Scalia, the author of *Blakely*, and Justice Souter) explained: "To be clear, our holding . . . does not establish the 'impermissibility of judicial factfinding.' [Citation.] Instead, judicial factfinding to support an offense level determination or an enhancement is *only unconstitutional when that finding raises the sentence beyond the sentence that could have been lawfully imposed by reference to facts found by the jury or admitted by the defendant.*" (*Booker, supra,* 543 U.S. at p. 278 (dis. opn. of Stevens, J.).)[5] The issue to be determined in each case is whether the trial court's factfinding increased the sentence that otherwise *could* have been imposed, not whether it raised the sentence above that which otherwise *would* have been imposed.

As noted above, under the DSL the presence of one aggravating circumstance renders it lawful for the trial court to impose an upper term sentence. (See § 1170, subd. (b); *People v. Osband, supra,* 13 Cal.4th at p. 728.) The court's factual findings regarding the existence of additional aggravating circumstances may increase the likelihood that it actually will impose the upper term sentence, but these findings do not themselves further raise the authorized sentence beyond the upper term. No matter how many additional aggravating facts are found by the court, the upper term remains the maximum that may be imposed. Accordingly, judicial factfinding on those additional aggravating circumstances is not unconstitutional.

*Cunningham* requires us to recognize that aggravating circumstances serve two analytically distinct functions in California's current determinate

---

[5] Justice Breyer's opinion did not take issue with Justice Stevens on this point. (See *Booker, supra,* 543 U.S. at p. 248 (maj. opn. by Breyer, J.).) Neither did the separate dissenting opinion of Justice Thomas. (*Booker, supra,* 543 U.S. at pp. 313, 319 ["the sentencing judge, without a jury, [may] resolve a factual dispute in order to decide where within the jury-authorized Guidelines range a defendant should be sentenced"].)

To illustrate, Justice Stevens provided the example of a case in which the sentencing range under the federal guidelines, taking into account only the offense itself and the defendant's criminal history, was 130 to 162 months. If the trial court found that the defendant possessed a firearm, the sentencing range would be enhanced to 151 to 188 months. This "act of judicial factfinding" regarding the firearm enhancement would comply with the Sixth Amendment so long as the sentencing court then selected a sentence no greater than 162 months, the longest sentence authorized by the defendant's offense and criminal history. (*Booker, supra,* 543 U.S. at p. 278 (dis. opn. of Stevens, J.).) In Justice Stevens's hypothetical, it was irrelevant, for Sixth Amendment purposes, that the court may have taken into account the defendant's possession of a firearm in selecting the particular sentence within the range authorized by the jury's verdict and the defendant's criminal history.

sentencing scheme. One function is to raise the maximum permissible sentence from the middle term to the upper term. The other function is to serve as a consideration in the trial court's exercise of its discretion in selecting the appropriate term from among those authorized for the defendant's offense. Although the DSL does not distinguish between these two functions, in light of *Cunningham* it is now clear that we must view the federal Constitution as treating them differently. Federal constitutional principles provide a criminal defendant the right to a jury trial and require the prosecution to prove its case beyond a reasonable doubt as to factual determinations (other than prior convictions) that serve the first function, but leave the trial court free to make factual determinations that serve the second function. It follows that imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions.

## V.

Applying the conclusions set forth above to the present case, we conclude that defendant's constitutional right to a jury trial was not violated by the trial court's imposition of the upper term sentence for his conviction of continuous sexual abuse. As explained below, we conclude that the statutory maximum sentence to which defendant was exposed by the jury's verdict was the upper term, because at least one aggravating circumstance (indeed, in this case, two) was established by means that satisfy the requirements of the Sixth Amendment.[6]

The trial court stated that it imposed the upper term in the present case primarily because of "the nature, seriousness, and circumstances of the crime." In describing those circumstances, the court commented that defendant "forced the victim . . . to have sexual intercourse with him on numerous occasions." The trial court's identification of the defendant's use of force as an aggravating circumstance was supported by the jury's verdict. The information alleged, and the jury found true beyond a reasonable doubt, that defendant committed the offense of continuous sexual abuse by means of "force, violence, duress, menace, and fear of immediate and unlawful bodily injury." This finding rendered defendant ineligible for probation. (§ 1203.066,

---

[6] See *Black I, supra*, 35 Cal.4th at page 1270 (conc. & dis. opn. of Kennard, J.) (discerning no violation of defendant's Sixth Amendment right to jury trial, because "the jury's findings pertaining to defendant's probation eligibility, and the trial court's findings pertaining to defendant's criminal record," satisfied the requirement of section 1170, subdivision (b) that an aggravating circumstance exist, "thereby making the upper term the statutory maximum for the offense").

subd. (a)(1).) Furthermore, and most significant for the issue presented here, the jury's true finding on this allegation established an aggravating circumstance that rendered defendant eligible for the upper term under section 1170. (See Cal. Rules of Court, rule 4.408(a) [which permits the trial court to consider any criteria "reasonably related to the decision being made"].)

██ Under established authority, the same fact may be used both to deny probation and to support imposition of an upper term sentence. (*People v. Scott* (1994) 9 Cal.4th 331, 350, fn. 12 [36 Cal.Rptr.2d 627, 885 P.2d 1040]; see Advisory Com. com., Cal. Rules of Court, rule 4.420.) ██ An aggravating circumstance is a fact that makes the offense "distinctively worse than the ordinary." (*People v. Moreno* (1982) 128 Cal.App.3d 103, 110 [179 Cal.Rptr. 879]; see *People v. Young* (1983) 146 Cal.App.3d 729, 734 [194 Cal.Rptr. 338].) Aggravating circumstances include those listed in the sentencing rules, as well as any facts "statutorily declared to be circumstances in aggravation" (Cal. Rules of Court, rule 4.421(c)) and any other facts that are "reasonably related to the decision being made." (Cal. Rules of Court, rule 4.408(a).) The crime of which defendant was convicted, continuous sexual abuse of a child, can be committed without the use of force, violence, menace, duress, or fear. (See § 288.5, subd. (a).) The Legislature's designation of the use of force or fear as a circumstance that renders a defendant ineligible for probation constitutes an expression of policy that such conduct makes the offense of continuous sexual abuse "distinctively worse than the ordinary" (*People v. Moreno, supra*, 128 Cal.App.3d at p. 110) and is something that properly may be considered as an aggravating circumstance. Defendant's employment of such means makes him deserving of punishment more severe than that merited for other offenders in the same category and thus is a fact "reasonably related to the decision being made." (Cal. Rules of Court, rule 4.408(a).) Because the jury found this allegation to be true, the "maximum sentence" that could be imposed "*solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*" (*Blakely, supra*, 542 U.S. at p. 303) was the upper term.

██ Contrary to defendant's suggestion, the circumstance that California Rules of Court, rule 4.421(a)(1) lists "great violence" or the "threat of great bodily harm" as an aggravating factor does not signify that the jury's finding (under section 1203.066), which did not include a finding that "great" violence or harm was used or threatened, cannot be a valid aggravating circumstance in defendant's case. The trial court is not limited to the aggravating circumstances listed in the rules. (Cal. Rules of Court, rule 4.408(a).) The circumstances listed in rule 4.421 are of general applicability and relevant to most crimes. Rule 4.421(a)(1)'s inclusion of "great" violence or harm does not preclude a finding that a lesser degree of force or violence is an aggravating circumstance for a crime that can be committed without any force or violence, particularly when the Legislature, in section 1203.066,

specifically has designated the use of force or violence as a circumstance that increases the gravity of the particular offense.

■ Moreover, a second aggravating circumstance—defendant's criminal history—also rendered defendant eligible for the upper term sentence. (§ 1170, subd. (b).) The United States Supreme Court consistently has stated that the right to a jury trial does not apply to the fact of a prior conviction. (*Cunningham, supra,* 549 U.S. at p. ___ [127 S.Ct. at p. 868]; *Blakely, supra,* 542 U.S. at p. 301; *Apprendi, supra,* 530 U.S. at p. 490; *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350, 118 S.Ct. 1219] (*Almendarez-Torres*).) "[R]ecidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." (*Almendarez-Torres, supra,* 523 U.S. at p. 243.)

■ The trial court stated it considered not only the circumstances of the crime but also the other aggravating circumstances set out in the district attorney's sentencing brief. In that brief, the prosecutor listed the aggravating circumstance described in California Rules of Court, rule 4.421(b)(2) as one of the aggravating circumstances applicable in this case. The probation report did likewise. California Rules of Court, rule 4.421(b)(2) specifies that it is an aggravating circumstance that "defendant's prior convictions . . . are numerous or of increasing seriousness." The probation report reflected that defendant had been convicted of three misdemeanors in May of 1992 (second degree burglary [§ 459], theft [§ 484], and receiving stolen property [§ 496]) and that he also had suffered two felony convictions in September of 1996 (grand theft [§ 487(a)] and burglary [§ 459]). These convictions are both numerous and of increasing seriousness. (See *People v. Searle* (1989) 213 Cal.App.3d 1091, 1098 [261 Cal.Rptr. 898] [three prior convictions are numerous]; *People v. Ramos* (1980) 106 Cal.App.3d 591, 609–610 [165 Cal.Rptr. 179] [where a defendant convicted of robbery had two minor juvenile offenses and prior adult convictions for petty theft and driving without a license, the prior convictions were of increasing seriousness].)[7]

---

[7] The district attorney's brief stated: "The defendant's prior convictions as an adult are numerous or of increasing seriousness. The defendant has two previous felony convictions from 1996, one for a grand theft and one for a commercial burglary." That the trial court referred (by its adoption of the district attorney's brief) to only two of defendant's five prior convictions is of no moment. On appellate review, a trial court's reasons for its sentencing choice are upheld if "supported by available, appropriate, relevant evidence." (*People v. Garcia* (1995) 32 Cal.App.4th 1756, 1775 [39 Cal.Rptr.2d 73]; see *id.* at p. 1777 [trial court did not err in relying upon " 'threats of great bodily injury' " as aggravating factor in robbery case in which enhancement also was imposed for personal firearm use, where substantial evidence showed threats of injury "by means distinct from . . . gun use"]; *People v. Hall* (1988) 199 Cal.App.3d 914, 922 [245 Cal.Rptr. 458] [each of the aggravating factors found by the trial court was supported by the record].) The trial court is presumed to have read and considered the probation report. (*People v. Montgomery* (1955) 135 Cal.App.2d 507, 514–515 [287 P.2d

Defendant contends he was entitled to a jury trial on the aggravating circumstance of his prior criminal history because, even if the trial court properly may decide whether a defendant has suffered a prior conviction, a jury must determine whether such convictions are numerous or increasingly serious. Defendant, however, reads the "prior conviction" exception too narrowly. (See *People v. McGee* (2006) 38 Cal.4th 682 [42 Cal.Rptr.3d 899, 133 P.3d 1054] (*McGee*) [defendant not entitled to have a jury determine whether his prior conviction in Nevada qualified as a serious felony for the purpose of imposing a sentence enhancement]; see also *People v. Thomas* (2001) 91 Cal.App.4th 212, 220–223 [110 Cal.Rptr.2d 571] [the exception recognized in *Apprendi* for " 'the fact of a prior conviction' " permits a trial court to decide whether a defendant has served a prior prison term].) As we recognized in *McGee*, numerous decisions from other jurisdictions have interpreted the *Almendarez-Torres* exception to include not only the fact that a prior conviction occurred, but also other related issues that may be determined by examining the records of the prior convictions. (See cases cited in *McGee, supra,* 38 Cal.4th at pp. 703–706; see also *U.S. v. Smith* (6th Cir. 2007) 474 F.3d 888, 892 [no right to a jury trial concerning the circumstance whether defendant's criminal history was " 'extensive and egregious' "].)[8]

The determinations whether a defendant has suffered prior convictions, and whether those convictions are "numerous or of increasing seriousness" (Cal.

---

520].) Its conclusion that defendant's prior convictions were numerous or of increasing seriousness is supported by the probation report, whose recitation of defendant's criminal history was not challenged by defendant in the trial court.

[8] Defendant urges us to conclude that the federal right to jury trial includes the right to a jury determination on prior conviction allegations. He contends that (1) it is likely that the United States Supreme Court will overrule *Almendarez-Torres* because that decision is inconsistent with *Apprendi* and *Blakely,* and (2) because neither *Apprendi* nor *Blakely* dealt directly with recidivism issues, this court is free to interpret the federal Constitution to require a jury trial on recidivism factors.

Although some of the reasoning in *Almendarez-Torres, supra,* 523 U.S. at pages 230–235, which focused upon whether Congress in its reference to recidivism intended to create an element of a crime or a sentencing factor, is inconsistent with the court's later reasoning in *Apprendi* and *Blakely,* which focuses upon the practical effect of the factual finding required, the court in both *Blakely* and *Cunningham* continued to exempt explicitly " 'the fact of a prior conviction.' " (*Blakely, supra,* 542 U.S. at p. 301, quoting *Apprendi, supra,* 530 U.S. at p. 490; *Cunningham, supra,* 549 U.S. at p. ___ [127 S.Ct. at p. 860]; see also *Booker, supra,* 543 U.S. 220, 245.) Because *Cunningham, Blakely,* and *Apprendi* explicitly acknowledge that the federal right to jury trial does not extend to the fact of a prior conviction, we decline to speculate that the high court will change its position on that issue. (See *McGee, supra,* 38 Cal.4th at pp. 707–709 [discussing the continuing validity of the *Almendarez-Torres* exception; see also *Rangel-Reyes v. United States* (2006) 547 U.S. 1200 [165 L.Ed.2d 910, 126 S.Ct. 2873] [on denial of petition for writ of certiorari, Justice Stevens stated that although he believes *Almendarez-Torres* was wrongly decided, he found insufficient reason to overrule the holding in that case].)

Rules of Court, rule 4.421(b)(2)), require consideration of only the number, dates, and offenses of the prior convictions alleged. The relative seriousness of these alleged convictions may be determined simply by reference to the range of punishment provided by statute for each offense. This type of determination is "quite different from the resolution of the issues submitted to a jury, and is one more typically and appropriately undertaken by a court." (*McGee, supra,* 38 Cal.4th at p. 706.)[9]

In summary, defendant's criminal history and the jury's finding that the offense involved the use of force or violence establish two aggravating circumstances that independently satisfy Sixth Amendment requirements and render him eligible for the upper term. Therefore, he was not legally entitled to the middle term, and his Sixth Amendment right to jury trial was not violated by imposition of the upper term sentence for the offense of continuous sexual abuse of a child.

## VI.

Defendant also contends that imposition of consecutive terms of imprisonment under section 669 based upon facts not found by a jury violated his Sixth Amendment rights. Section 669 requires that when a person has been convicted of two or more offenses (whether in the same or separate proceedings), the court must decide whether the terms are to run concurrently

---

[9] Defendant also contends the trial court's reliance upon his criminal history does not satisfy constitutional commands, because due process requires that a defendant's prior conviction, even if properly determined by the trial court, must be proved beyond a reasonable doubt. Furthermore, defendant argues, the evidence of his prior convictions consisted only of hearsay statements, contained in the probation report, which are insufficient as a matter of law to prove the prior convictions beyond a reasonable doubt. Presumably, the trial court applied a standard of proof by a preponderance of the evidence. (See Cal. Rules of Court, rule 4.420(b).) Defendant notes that *Almendarez-Torres* held only that the fact of a prior conviction need not be alleged in an indictment. Because the defendant in that case admitted his recidivism when he pleaded guilty, the high court "express[ed] no view on whether some heightened standard of proof might apply to sentencing determinations which bear significantly on the severity of sentence." (*Almendarez-Torres, supra,* 523 U.S. at p. 248.)

Defendant does not cite any case affirmatively supporting his contention that the federal Constitution requires prior convictions to be proved beyond a reasonable doubt even if a jury trial is not required. The United States Supreme Court has stated the rule and the *Almendarez-Torres* exception as follows: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi, supra,* 530 U.S. at p. 490.) The high court never has suggested that the requirement of proof beyond a reasonable doubt could be severed from the right to jury trial for purposes of applying the foregoing rule or its exception. (See, e.g., *U.S. v. Salazar-Gonzalez* (9th Cir. 2006) 458 F.3d 851, 859 ["[T]he fact of a prior conviction may be found by a district court using a preponderance of the evidence standard"]; *U.S. v. Barrero* (2d Cir. 2005) 425 F.3d 154, 157 ["[I]t is well established that a court may find the fact of a prior conviction by a preponderance of the evidence"].)

or consecutively. If the court fails to direct how the terms are to run, they must be served concurrently. (*Ibid.*)

In our prior decision in this case, we rejected this argument by defendant, concluding that a "jury's verdict finding the defendant guilty of two or more crimes authorizes the statutory maximum sentence for each offense." (*Black I, supra*, 35 Cal.4th at p. 1263.) *Cunningham* did not address the question whether the principles established in *Blakely* apply to consecutive term sentences under section 669.

*Cunningham*, however, does not undermine our previous conclusion that imposition of consecutive terms under section 669 does not implicate a defendant's Sixth Amendment rights. In *Black I* we explained that "*Blakely*'s underlying rationale is inapplicable to a trial court's decision whether to require that sentences on two or more offenses be served consecutively or concurrently. We previously have recognized that *Apprendi* '. . . treated the crime together with its sentence enhancement as the "functional equivalent" of a single "greater" crime. [Citation.]' (*People v. Sengpadychith, supra*, 26 Cal.4th at p. 326.) Similarly, *Blakely* treats the crime together with a fact that is a prerequisite to eligibility for a greater punishment as the functional equivalent of a greater crime. The high court's decisions in *Blakely* and *Apprendi* are intended to protect the defendant's historical right to a jury trial on all elements of the crime, which the court concluded would be jeopardized if a legislature could label facts affecting the length of the authorized sentence for an offense as sentencing factors rather than as elements and thereby eliminate the right to a jury trial on such facts. [¶] . . . Nothing in the high court's decisions in *Apprendi*, *Blakely*, or *Booker* suggests that they apply to factual determinations that do not serve as the 'functional equivalent' of an element of a crime." (*Black I, supra*, 35 Cal.4th at pp. 1262–1263, fn. omitted.)

On this point, the high courts of several states have held, consistently with our opinion in *Black I*, that a trial court's imposition of consecutive sentences does not violate a defendant's Sixth Amendment right to jury trial. (See *Smylie v. State* (Ind. 2005) 823 N.E.2d 679, 686 [when trial court has discretion to impose consecutive sentence if it finds at least one aggravating circumstance and applicable statute contains no presumption favoring concurrent sentences, "[t]here is no constitutional problem with consecutive sentencing so long as the trial court does not exceed the combined statutory maximums"]; *State v. Abdullah* (2005) 184 N.J. 497 [878 A.2d 746, 756] [when trial court has discretion to impose consecutive terms, taking into account specified factors, and sentencing scheme does not contain any presumption in favor of concurrent sentences, "the maximum potential sentence authorized by the jury verdict is the aggregate of sentences for multiple

convictions"]; *State v. Tanner* (2006) 210 Or.App. 70 [150 P.3d 31] [judicial factfinding in decision to impose consecutive sentences does not violate Sixth Amendment]; *Barrow v. State* (Tex.Crim.App. 2006) 207 S.W.3d 377, 379 ["*Apprendi* and its progeny clearly deal with the upper-end extension of individual sentences, when that extension is contingent upon findings of fact that were never submitted to the jury. These decisions do not, however, speak to a trial court's authority to cumulate sentences when that authority is provided by statute and is not based upon discrete fact-finding, but is wholly discretionary"]; *State v. Cubias* (2005) 155 Wn.2d 549 [120 P.3d 929, 931–932] ["It seems clear from *Blakely* that so long as the sentence for *any single offense* does not exceed the statutory maximum for that offense, as is the case here, *Blakely* is satisfied"].)

Some state courts have concluded that if the sentencing scheme creates a presumption in favor of concurrent sentences that may be overcome only by factual findings, the Sixth Amendment requires that those findings be made by a jury. (See *State v. Foster* (2006) 109 Ohio St. 3d 1 [2006 Ohio 856, 845 N.E.2d 470, 491] [when statute requires concurrent terms unless specified findings are made, *Blakely* applies to consecutive sentencing]; *Pers. Restraint of VanDelft* (2006) 158 Wn.2d 731 [147 P.3d 573], cert. den. *sub nom. Washington v. VanDelft* (2007) ___ U.S. ___ [167 L.Ed.2d 1172, 127 S.Ct. 2876] [concluding that imposition of consecutive sentences violates *Blakely* when statute creates presumption of concurrent sentencing, and distinguishing *State v. Cubias, supra*, 120 P.3d 929].) Assuming these latter decisions are correct, however, section 669 does not create such a scheme. California's statute does not establish a presumption in favor of concurrent sentences; its requirement that concurrent sentences be imposed if the court does not specify how the terms must run merely provides for a default in the event the court fails to exercise its discretion. (*People v. Reeder* (1984) 152 Cal.App.3d 900, 923 [200 Cal.Rptr. 479].)

■ In deciding whether to impose consecutive terms, the trial court may consider aggravating and mitigating factors, but there is no requirement that, in order to justify the imposition of consecutive terms, the court find that an aggravating circumstance exists. (See § 669; Cal. Rules of Court, rule 4.425(a), (b).) Factual findings are not required. In imposing an upper term, the court must set forth on the record "facts and reasons" (§ 1170, subd. (b)), including the "ultimate facts that the court deemed to be circumstances in aggravation." (Cal. Rules of Court, rule 4.420(e).) But it need only cite "reasons" for other sentencing choices (§ 1170, subd. (c)), and the reasons given for imposing a consecutive sentence need only refer to the "primary factor or factors" that support the decision to impose such a sentence (Cal. Rules of Court, rule 4.406(a), (b); see § 1170, subd. (c); see *People v. Tran* (1996) 47 Cal.App.4th 759, 774 [54 Cal.Rptr.2d 905]).

The high court's decision in *Cunningham* does not call into question the conclusion we previously reached regarding consecutive sentences. The determination whether two or more sentences should be served in this manner is a "sentencing decision[] made by the judge after the jury has made the factual findings necessary to subject the defendant to the statutory maximum sentence on each offense" and does not "implicate[] the defendant's right to a jury trial on facts that are the functional equivalent of elements of an offense." (*Black I, supra*, 35 Cal.4th at p. 1264.) Accordingly, we again conclude that defendant's constitutional right to jury trial was not violated by the trial court's imposition of consecutive sentences on all three counts.

## VII.

For the reasons stated above, the decision of the Court of Appeal is affirmed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.

**KENNARD, J.,** Concurring.—When this matter was first before this court, the majority held that California's determinate sentencing law did not violate a defendant's federal constitutional right to a trial by jury, with a beyond-a-reasonable-doubt standard of proof. (*People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534] (*Black I*).) I disagreed, concluding that under a trio of decisions by the United States Supreme Court (*Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348]; *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531]; *United States v. Booker* (2005) 543 U.S. 220 [160 L.Ed.2d 621, 125 S.Ct. 738]), "the Sixth Amendment to the federal Constitution guarantees a defendant a right to a jury trial on any aggravating fact (other than a fact concerning the defendant's criminal history) that the trial court uses to impose an upper term" (*Black I, supra*, 35 Cal.4th at pp. 1264–1265 (conc. & dis. opn. of Kennard, J.)).

The majority's holding in *Black I* was rejected by the United States Supreme Court in *Cunningham v. California* (2007) 549 U.S. 270 [166 L.Ed.2d 856, 127 S.Ct. 856] (*Cunningham*), which remanded the matter to this court for reconsideration. Today's decision reflects the views expressed in the high court's decision in *Cunningham* and in my concurring and dissenting opinion in *Black I*; it now acknowledges the high court's holding that "California's determinate sentencing law (DSL) violates a defendant's federal constitutional right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution by assigning to the trial judge, rather than the jury, the authority to make the factual findings that subject a defendant to the possibility of an upper term sentence." (Maj. opn., *ante*, at p. 805.)

The court today also holds that "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." (Maj. opn., *ante*, at p. 816.) Here, the court explains, defendant's upper term sentence did not violate his right to a jury trial "because at least one aggravating circumstance (indeed, in this case, two) was established by means that satisfy the requirements of the Sixth Amendment." (*Id.* at p. 816.) And the trial court's "imposition of consecutive terms . . . does not implicate a defendant's Sixth Amendment rights." (*Id.* at p. 821.) I reached those same conclusions in my concurring and dissenting opinion in *Black I, supra,* 35 Cal.4th at pp. 1264–1265, 1269–1270 (conc. & dis. opn. of Kennard, J.), and nothing in the high court's recent decision in *Cunningham, supra,* 549 U.S. 270 [127 S.Ct. 856] alters my views. I therefore join in today's decision.