Filed 1/8/16  P. v. Mitchell CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| THE PEOPLE, | C076901 |
| Plaintiff and Respondent, | (Super. Ct. No. 13F05850) |
| v. | |
| ERIC LEWIS MITCHELL, | |
| Defendant and Appellant. | |

Sentenced to an aggregate state prison term of 14 years after a jury convicted him of rape and forcible oral copulation, defendant Eric Lewis Mitchell contends the trial court abused its discretion by imposing the eight-year upper term for rape.  We affirm the judgment.

FACTS AND PROCEEDINGS

A first amended information accused defendant of forcible rape (count 1; Pen. Code, § 261, subd. (a)(2); unless otherwise set forth statutory references that follow are to the Penal Code) and forcible oral copulation (count 2; § 288a, subd. (c)(2)).  The information alleged as to both counts that defendant inflicted great bodily injury upon the victim.  (§ 12022.8.)

1

Trisha Doe, the victim, testified that on the date of the crime, she got off work, went home to her apartment in Del Paso Heights, and had some brandy. Later, she left her apartment to buy more brandy and saw defendant, who lived in a house across the street. They were not closely acquainted, but they would say hello when they saw each other and she would occasionally give him a cigarette.

Trisha asked defendant, who was also going to the store, to accompany her. They walked to the store, made their purchases, and started to return home. Defendant suggested they return by way of the American River bike trail.

As soon as they got on the trail, defendant grabbed Trisha from behind and tried to choke her. She attempted to break away, but failed.

Overcoming Trisha's resistance, defendant removed her shorts, then repeatedly tried to insert his penis into her vagina; every time she struggled or screamed for help, he choked her again. At first, he put her on her hands and knees, then on her back; his penis went inside her "a little bit." She could feel that it was erect. Eventually, he put it inside her mouth.

The assault lasted 15 to 20 minutes, but Trisha believed she was unconscious part of the time and could not remember all the details. She saw people going by on the trail, but no one helped her. At one point, she saw a man on a bicycle watching and screamed for help, but defendant choked her to silence her. Unable to breathe, she feared for her life.

Fernando Ohler, riding home from work on his bicycle, saw defendant in the act of assaulting Trisha and heard her yelling for help in "terror." Ohler called out to defendant to stop and said he was calling 911, but defendant did not stop. Ohler then called 911 and reported the rape in progress.

A dispatch call went out at 7:28 p.m. Officers arriving on the scene seven or eight minutes later found defendant still raping and choking Trisha, who was lying on her back

2

in the middle of the bike trail; people continued to walk by without helping. Seeing the officers, defendant got off Trisha; his penis was semi-erect.

Trisha crawled backward toward the officers, screaming for help, shaking and crying and saying she wanted to get out of there. She had red fingerprints and marks on her neck, scratched knees and elbows, a chipped tooth, and redness in the corners of her eyes. Due to her neck injury, she was salivating and could not swallow. She said she thought she was going to die.

Dr. Angela Rosas, who conducted a sexual assault examination of Trisha, found injuries to the hymen consistent with penetration by a penis. Trisha's other injuries included bruising and abrasions on her knees, legs, upper chest, and left arm, a chipped tooth, and many signs of strangulation (petechia from her chest to her face, hemorrhaging in the whites of her eyes, bruises across her neck, hoarseness, a cough, and difficulty swallowing). Dr. Rosas referred her to the emergency department for treatment of her strangulation injuries.

Defendant did not testify. His only witness was Dr. Bennet Omalu, a county medical examiner and expert in forensic and anatomical pathology, who opined based on photographs of Trisha's genitalia, police reports, and medical records that she had not been vaginally penetrated, but had suffered only fingernail abrasions in that area.

The jury convicted defendant on counts 1 and 2, but could not reach a verdict on the great bodily injury allegations, as to which the trial court declared a mistrial.

The probation report recommended an aggregate state prison sentence of 16 years, consisting of the upper term on both counts run consecutively. As to count 1, the report stated as a circumstance in aggravation that the manner in which defendant carried out the crime indicated planning. (Cal. Rules of Court, rule 4.421(a)(8); further references to "rules" are to the Cal. Rules of Court.) As to count 2, the report stated as a circumstance in aggravation that the crime involved acts disclosing a high degree of cruelty and callousness. (Rule 4.421(a)(1).) As to full consecutive sentencing, the report stated as a

3

circumstance in aggravation that defendant had been convicted of multiple violent sex crimes involving a single victim during a single occasion, reflecting that he was a danger to society.  (Rules 4.421(b)(1), 4.426.)  The report noted as circumstances in mitigation that defendant was youthful (age 20) (rule 4.408) and had no known prior criminal record (rule 4.423(b)(1)).  The report attached letters on defendant's behalf from family members and a family friend, which stated that defendant had recently gone through emotional stress due to his father's major illness.

Defense counsel argued that if the trial court sentenced consecutively, it should choose the lower term on both counts.

Counsel disputed the factors in aggravation found by the probation report. According to counsel, defendant's crimes did not involve any violence or callousness greater than that necessary to commit the crimes and did not show that defendant's violent conduct made him a danger to society:  "[A]lmost in every rape by force or oral cop by force you're going to have some force or violence, and therefore I think that's somewhat subsumed by the actual elements for [*sic*] the offense."  As to "planning," counsel asserted that it was the victim who asked to join defendant going to the store, and that the circumstances of the assault -- "an attack that was carried out in broad daylight in the middle of an open field on a bike trial" -- showed "a lack of planning," if anything. Lastly, counsel stressed the factors in mitigation:  defendant's youth, lack of a criminal record, and recent stress from his father's illness.

The prosecutor argued in support of the probation report's recommendation: Strangling the victim to the point of unconsciousness more than once, as defendant did, was not an element of either charged offense and showed a high degree of cruelty and callousness.  Assaulting the victim in a public place in full view of passersby was especially degrading and callous.  The fact that defendant was not deterred by eyewitnesses to his assault indicated his dangerousness to the community.  Although he

4

had no criminal convictions or sustained juvenile allegations, he did have juvenile "contacts" with the criminal system that were not mentioned in the probation report.

The trial court ruled that it would impose the upper term on count 1 (forcible rape) based on rule 4.421(a) (crime involved great violence and acts disclosing a high degree of cruelty, viciousness, or callousness). Defendant's crime was brutal beyond the norm for sexual assault. Although the jury hung on the great bodily injury allegations, the court could consider the extent of the victim's injuries in assessing the brutality of the crime. The court also found that rule 4.421(b)(1) (defendant's conduct shows he is a danger to society) applied. The court found further that under rule 4.426(a)(2) (crimes committed against a single victim on separate occasions), consecutive sentencing was appropriate on count 2; however, the court chose the six-year midterm on that count due to defendant's youth and insignificant prior criminal record.

## DISCUSSION

Defendant contends the trial court's choice of the upper term on count 1 was an abuse of discretion.

When making sentencing decisions, trial courts have wide discretion in weighing aggravating and mitigating factors. (*People v. Avalos* (1996) 47 Cal.App.4th 1569, 1582 (*Avalos*).) A single valid aggravating factor justifies the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 815 (*Black*).) The court may rely on any aggravating circumstances reasonably related to its sentencing decision (*People v. Sandoval* (2007) 41 Cal.4th 825, 848) and need not explain its reasons for rejecting alleged mitigating circumstances (*Avalos, supra*, 47 Cal.App.4th at p. 1583). We review the court's sentencing choices for abuse of discretion. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978.)

The trial court cited two aggravating factors to justify the upper term on count 1: the great violence, brutality, and callousness involved in the crime (rule 4.421(a)(1)), and

5

the serious danger to society indicated by the violence of defendant's conduct (rule 4.421(b)(1)). Defendant's opening brief offers no argument as to the second factor, and his reply brief expressly concedes that it applies. Since a single valid aggravating factor justifies the upper term (*Black, supra*, 41 Cal.4th at p. 815), the court's sentencing decision on count 1 was within its discretion if the record supports the one aggravating factor relied on by the trial court in sentencing defendant for the crime of rape.

Turning to that, defendant's argument (for which he cites no supporting authority) that his rape of the victim was not exceptionally violent, brutal, or callous needs only brief discussion. Like the trial court, we find it unpersuasive. Defendant's strangulation of the victim, which was not an element of the offense, inflicted pain and injury on her beyond that inherent in the act of rape. And his decision to perpetrate the crime in a public place in the view of many passersby, exposing the victim to prolonged shame and humiliation, was extraordinarily callous. The record amply supports the trial court's view that the rape of Trisha D. demonstrated great violence, brutality, and callousness.

DISPOSITION

The judgment is affirmed.

                                               HULL                , J.

We concur:

       RAYE        , P. J.

       ROBIE      , J.