Filed 5/29/14  P. v. Troncoso CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E058207 |
| v. | (Super.Ct.No. FVI901178) |
| ARTURO TRONCOSO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Eric M. Nakata, Judge.  Affirmed in part; reversed in part.

Jill M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Paige B. Hazard, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant and appellant Arturo Troncoso of gross vehicular manslaughter while intoxicated (count 2; Pen. Code, § 191.5, subd. (a)), driving under the

influence causing injury (count 3; Veh. Code, § 23153, subd. (a)),[1] and driving under the influence with a blood alcohol level of 0.08 percent or greater while causing injury (count 4; Veh. Code, § 23153, subd. (b)).  The jury additionally found true allegations attached to counts 2, 3, and 4, that defendant had proximately caused bodily injury (Veh. Code, § 23558) and personally inflicted great bodily injury (Pen. Code, § 12022.7) upon victims Susan Wallace (Wallace) and Ephraim Harris (Harris).  The jury furthermore found true allegations attached to counts 3 and 4 that defendant had suffered a prior conviction for driving under the influence pursuant to section Vehicle Code section 23152, subdivision (b).

The court sentenced defendant to an aggregate, determinate term of 16 years' incarceration consisting of the following:  the aggravated term of 10 years on count 2 and two consecutive terms of three years for each of the Penal Code section 12022.7 enhancements.  The court imposed but stayed sentence on counts 3 and 4 and the attached enhancements pursuant to Penal Code section 654.

On appeal, defendant contends his convictions for the count 3 and 4 offenses and the true findings on the attached enhancements must be reversed because the substantive crimes are lesser included offenses of the count 2 offense.  The People agree.  Defendant further argues the order revoking his driving privileges must be stricken.  Finally, defendant maintains the sentencing court erred in failing to state its reasons for imposing

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

the aggravated term on count 2 and abused its discretion in imposing the aggravated term based on factors already subsumed within the crimes for which the jury convicted him. We reverse the convictions and attached enhancements in counts 3 and 4. In all other respects, the judgment is affirmed.

FACTUAL BACKGROUND

On May 22, 2009, around 2:00 a.m., Stacy Clay was driving home from work when she noticed two sets of vehicle lights in her rear view mirror approaching "very quickly." "[I]t looked like they were racing each other . . . ." It appeared to her the vehicles were traveling between 80 and 90 miles per hour. A black truck, which had been stopped at a stop sign on a side street up ahead of her, pulled out and was struck by the speeding silver vehicle. The black truck was pushed between 200 and 300 feet and "smashed like an accordion."

Clay pulled over and called the San Bernardino County Sheriff's dispatch to report the collision. The passenger of the silver car was unconscious and pinned in the car by the dashboard. The passenger in the rear seat was moaning.

Several sheriff's deputies were dispatched to the site of the collision. A black Nissan Frontier and a silver BMW were involved in the accident. There were two women in the Frontier; the driver was deceased; the front passenger, Wallace, was taken to the hospital, where she was placed on life support. Defendant, the driver of the silver BMW, was lying outside his vehicle. Two other persons had been inside the BMW.

A deputy approached defendant and smelled the odor of alcohol. The deputy requested a nurse be dispatched to the location; she arrived and conducted a blood draw

3

from defendant at 2:42 a.m. Defendant's blood alcohol level was 0.16 percent, twice the legal limit.

A deputy later contacted defendant at the hospital. Defendant said he had consumed one 24-ounce beer at a friend's party. He had a 12-ounce beer, a mixed drink, and sips from his friends' mixed vodka drinks at a bar thereafter. When the bar closed at 2:00 a.m., he left, driving his silver BMW, with his friends Harris and Andrue Jaynes. Defendant said he was traveling between 50 and 55 miles per hour until he accelerated up to 75 miles per hour to pass a vehicle in front of him. An officer from the Major Accident Investigation Team determined defendant's vehicle had been traveling at 81 miles per hour when it collided with the other vehicle.

The forensic pathologist who conducted the autopsy of the deceased victim testified the victim had sustained rib and pelvic fractures; internal bleeding from damage to her internal organs; fractures of both arms; and contusions and abrasions on her chest, arms, legs, and abdomen. The pathologist determined the cause of death was multiple blunt force injuries.

Wallace "had significant head injury and bony fractures, especially to the face, and spinal injury. She was in critical condition. She required intubation at the time." Wallace had swelling of the brain, multiple facial fractures, and lung contusions; she was on a ventilator. She was transferred to the ICU on June 3, 2009. Wallace testified she has no memory of the date of the accident. Half her right side remains paralyzed and she has vision problems. Wallace will have back problems for the rest of her life. Harris was

4

treated at the hospital for a closed head injury with subdural and intracranial contusions. He also had clavicle and hand fractures.

Defendant had sustained a prior conviction on February 23, 2007, for driving with a blood alcohol level of 0.08 percent or higher. At the time of his conviction, defendant had been read the *Watson*[2] warning as follows: "'Being under the influence of alcohol or drugs or both impairs your ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life to drive while under the influence of alcohol or drugs or both. And if you continue to drive while under the influence of alcohol or drugs or both and, as a result of that driving, someone is killed, you could be charged with murder.'" As a condition of his conviction, defendant had been required to take a DUI first offenders' program in which he had been taught the dangers of driving under the influence.

Defendant testified he had one drink before leaving for the bar. Since several hours had elapsed since he had the drink, he believed he was okay to drive. At the bar he had one drink. When he left the bar he also felt okay to drive. Defendant sped up to 75 miles per hour in a 55-mile-per-hour zone in order to pass another vehicle. He collided with the black Nissan Frontier killing one of the victims.

---

[2] *People v. Watson* (1981) 30 Cal.3d 290, 298.

DISCUSSION

A.      Counts 3 & 4 as Lesser Included Offenses of the Count 2 Offense.

Defendant contends his count 3 and 4 convictions for driving under the influence causing injury (Veh. Code, § 23153, subd. (a)) and driving under the influence with a blood alcohol level of 0.08 percent or higher causing injury (Veh. Code, § 23153, subd. (b)) must be reversed because they are lesser included offenses of his conviction in count 2 for gross vehicular manslaughter (Pen. Code, § 191.5, subd. (a)).  The People agree. We will reverse the convictions and attached enhancements.

"When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed.  [Citations.]" (*People v. Sanders* (2012) 55 Cal.4th 731, 736.)  Enhancement allegations may not be considered in determining lesser included offenses.  (*People v. Ybarra* (2008) 166 Cal.App.4th 1069, 1095, disapproved on another ground in *People v. Gutierrez,* S206365, S206771, SUPREME COURT OF CALIFORNIA, 2014 Cal. LEXIS 3135, May 5, 2014.)

"Vehicle Code section 23153, subdivision (a) is necessarily included in Penal Code section 191.5.  One person who injures a person while driving under the influence commits a violation of Vehicle Code section 23153; and if that person dies from that injury—whether immediately or sometime later—a violation of Penal Code section 191.5 has occurred." (*People v. Miranda* (1994) 21 Cal.App.4th 1464, 1468.)  "In cases where one victim dies from an alcohol-related accident due to a violation of Vehicle Code

6

sections 23140, 23152, or 23153, the Vehicle Code violation would always be a lesser-included offense of [former Penal Code] section 192, subdivision (c)(3) [now Penal Code section 191.5, subdivision (a)]." (*People v. Binkerd* (2007) 155 Cal.App.4th 1143, 1149.) "Under the statutory elements test, the violation of Vehicle Code section 23153 is necessarily a lesser included offense of [former Penal Code] section 192, subdivision (c)(3), and appellant cannot be convicted of violating both statutes." (*Id*. at p. 1150.)

Here, as the parties agree, defendant's convictions for driving under the influence causing injury and driving under the influence with a blood alcohol level of 0.08 percent or higher causing injury are necessarily, lesser included offenses of gross vehicular manslaughter. Thus, defendant's convictions for counts 3 and 4 must be reversed. Likewise, the enhancements attached to counts 3 and 4 must be stricken. (*People v. Binkerd*, *supra*, 155 Cal.App.4th at p. 1150.)

B.    Revocation of Defendant's Driver's License.

Defendant contends the order revoking his driver's license pursuant to section 13352 must be stricken because that section provides for revocation only where the defendant has been convicted of a violation of section 23153. Since we have reversed defendant's convictions on counts 3 and 4 for offenses under section 23153, he maintains the order revoking his driver's license must be reversed. We disagree.

The court revoked defendant's driver's license pursuant to Vehicle Code section 13352, which requires the suspension or revocation of anyone convicted of a violation of Vehicle Code section 23153. Although we have reversed defendant's convictions under Vehicle Code section 23153, Vehicle Code section 13351, subdivision (a)(3) requires

7

revocation of the privilege of a person to drive a motor vehicle upon conviction under Penal Code section 191.5, subdivision (a). "'"'[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason.'"' [Citations.]" (*People v. Jackson* (2014) 58 Cal.4th 724, 753.) Here, the court was not aware defendant's convictions on counts 3 and 4 were lesser included offenses of the count 2 conviction. Thus, the court could not have known we would reverse the former convictions. Regardless, the court's order was correct in law and will not be disturbed on appeal.

### C. Sentencing Issues.

Defendant contends the court failed its duty to state its reasons for imposing the aggravated term and that no factors on the record support the imposition of the upper term. Therefore, defendant argues the matter must be remanded for resentencing. We hold defendant forfeited the issue by failing to object below. To the extent we hold the issue was forfeited, defendant maintains his counsel provided constitutionally ineffective assistance of counsel (IAC) for failing to object. We hold defendant's IAC claim fails because the court satisfied its duty to articulate a legally permissible basis for imposing the upper term.

#### 1. Forfeiture.

"'[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal.' [Citation.] 'Included [within the (forfeiture) doctrine] are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court

8

purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons.' [Citation.]" (*People v. de Soto* (1997) 54 Cal.App.4th 1, 8.)

"A fact that is an element of the crime upon which punishment is being imposed may not be used to impose a greater term." (Cal. Rules of Court, rule 4.420(d).) "It is established that a circumstance that is an element of the substantive offense cannot be used as a factor in aggravation. [Citations.] A sentencing factor is only an element of the offense, however, if the crime as defined by statute cannot be accomplished without performance of the acts which constitute such factor. [Citation.]" (*People v. Burbine* (2003) 106 Cal.App.4th 1250, 1261-1262.) "In exercising his or her discretion in selecting one of the three authorized prison terms referred to in [Penal Code] section 1170 [subdivision] (b), the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision." (Cal. Rules of Court, rule 4.420(b).)

Here, although defense counsel argued for imposition of the lower term, he never objected to the probation report or the court's reliance upon defendant's prior conviction for the recommended aggravated term as a violation of the proscription against dual use of a factor included as an element of the substantive offense for which defendant had been convicted. Likewise, after the court pronounced sentence, it asked if there was "[a]nything else for the record?" Defense counsel replied "No, sir." Thus, defense counsel had ample opportunity to object to the court's ostensible failure to state its reasons for imposing the upper term or its reliance upon defendant's prior conviction for

9

imposing that sentence. Therefore, defendant forfeited the sentencing contentions on appeal.

2. Ineffective Assistance of Counsel.

"'The law governing defendant's claim is settled. "A criminal defendant is guaranteed the right to the assistance of counsel by both the state and federal Constitutions. [Citations.] 'Construed in light of its purpose, the right entitles the defendant not to some bare assistance but rather to *effective* assistance.'" [Citation.] It is defendant's burden to demonstrate the inadequacy of trial counsel. [Citation.] [The court has] summarized defendant's burden as follows: "'In order to demonstrate ineffective assistance of counsel, a defendant must first show counsel's performance was "deficient" because his "representation fell below an objective standard of reasonableness . . . under prevailing professional norms." [Citations.] Second, he must also show prejudice flowing from counsel's performance or lack thereof. [Citation.] Prejudice is shown when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."'" [Citation.]" (*People v. Vines* (2011) 51 Cal.4th 830, 875-876.)

We discern no deficient performance of defense counsel below. Defendant contends the court failed to state its reasons for imposing the aggravated term as required by California Rules of Court, rule 4.406(b)(4). Here, however, the court indicated it had read and considered the probation report prior to the hearing. The court then read from the probation report the factors relating to defendant personally, his commission of the

10

instant offenses, and his eligibility for probation. The court struck two of the mitigating factors listed in the probation report. The court noted, "[t]he interesting thing about this, I don't see also the criteria that involves multiple victims. There [was] more than one victim in this event, and that is a circumstance in aggravation." The court then imposed the aggravated term on count 2. It is readily apparent from the context of the hearing as a whole that the court adopted the aggravating circumstances it read from the probation report as its reasons for imposing the upper term. Thus, the court did not fail to state is reasons for imposing the upper term and defense counsel's performance was not deficient for failing to object on that basis.

Defendant additionally maintains defense counsel failed to object to the court's dual use of defendant's prior conviction as an aggravating factor and that no other factor supports imposition of the upper term. First, one legally sufficient aggravating factor justifies imposition of the upper term. (*People v. Black* (2007) 41 Cal.4th 799, 813.) Here, the court's stated reason, not listed in the probation report, that defendant's offenses involved multiple victims was, in and of itself, a sufficient basis to impose the upper term. (Cal. Rules of Court, rule 4.408(a) ["The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made. Any such additional criteria must be stated on the record by the sentencing judge"].)

Second, defendant's prior conviction was not an element of any of the substantive crimes for which defendant was convicted. (Cal. Rules of Court, rule 4.420(b) ["A fact that is an *element* of the *crime* upon which punishment is being imposed may not be used

11

to impose a greater term"; italics added]; *People v. Burbine*, *supra*, 106 Cal.App.4th at p. 1261 ["It is established that a circumstance that is an *element* of the *substantive offense* cannot be used as a factor in aggravation"; italics added].) Thus, consideration of defendant's prior DUI conviction when imposing the upper term did not violate the proscription against dual use of factors relating to the convictions.

Third, the court noted defendant has sustained additional convictions and sustained allegations other than the prior DUI conviction. Allegations in several juvenile wardship petitions against defendant had been sustained for misdemeanor possession of tear gas, misdemeanor petty theft, misdemeanor vandalism, and misdemeanor possession of vandalism tools. Defendant had a prior adult conviction for vandalism. Defendant had twice previously had his probation revoked. Fourth, defendant was on a probation when he committed the instant offense.

Fifth and finally, defendant showed no remorse. As the probation report reflected, although defendant admitted committing the instant offense, "defendant expressed dismay at his personal distress, and the possible length of his incarceration; however, at no point did he express any remorse for the death of a young woman, the physical injuries incurred by her passenger, or the grief their families and friends will likely suffer for some time to come. Nor did he express any concern for the physical wellbeing of his passengers; they weren't really his friends after all. The defendant's complete lack of remorse during the probation interview is of extreme concern." At the sentencing hearing, defendant's sole statement consisted of the following: "I just want to ask all families to forgive me, just forgive me for everything that happened. I just want to

12

apologize, and that will be it." Thus, the court stated legally permissible bases for imposing the upper term, none of which violated the proscription against dual use of factors relating to the conviction. Therefore, defense counsel did not perform deficiently by declining to object on that basis.

## DISPOSITION

Defendant's convictions and attached enhancements on counts 3 and 4 are reversed. In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


HOLLENHORST
Acting P. J.


RICHLI
J.

13