Filed 9/12/14  P. v. Rich CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060003 |
| v. | (Super.Ct.No. FVI1302252) |
| SEAN IAN RICH, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Eric M. Nakata, Judge.  Affirmed.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted defendant of petty theft (count 1; Pen. Code, § 484, subd. (a)).[1]

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated. The People charged defendant by information with petty theft with a prior (Count 1; § 666, subd. (b)).  In order that the jury would not be prejudiced by evidence of

*[footnote continued on next page]*

1

Defendant thereafter admitted a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)) and four prior prison terms (§ 667.5, subd. (b)). The court sentenced defendant to an aggregate, determinate term of ten years' imprisonment.

After defendant's trial counsel filed the notice of appeal, this court appointed counsel to represent defendant. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493], setting forth a statement of the case, a statement of the facts, and identifying three potentially arguable issues: 1) whether the trial court prejudicially erred in denying defendant's motion to suppress his confession as the involuntary result of coercive police tactics; 2) whether the People committed prejudicial *Griffin*[2] error in referencing the fact that defendant never denied being the individual who took the property; and 3) whether the trial court abused its discretion in sentencing defendant by not espousing proper reasons for imposing the aggravated term and not striking defendant's prior strike offense. We affirm.

FACTUAL AND PROCEDURAL HISTORY

On February 5, 2013, around 1:00 p.m., the owner, Rebecca Ducommun, of the Treasure House Mall, an antique consignment store, and her clerk, Samantha Santiago, heard a car alarm go off directly in front of the store. Ducommun saw defendant carrying

---

*[footnote continued from previous page]*
defendant's prior criminal record, defendant admitted a prior strike conviction for second degree robbery. The People stipulated to his admission for that purpose. Thus, upon defendant's conviction of petty theft, the offense was elevated to petty theft with a prior.

[2] *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*).

2

a large item while trying to get into a car. She went outside to help defendant, but realized the case he was holding belonged to one of her consignment patrons. Defendant yelled to his two friends who had been inside the store to come unlock the car. Defendant placed the case on the ground in front of the car. Defendant and his friends got into the car and left.

Ducommun picked up the solid glass case and brought it back into the store. The case contained antique currency worth $2,500. Ducommun called the police who arrived shortly thereafter. She reviewed video surveillance recordings in the store with the police which showed defendant pick up the glass case and take it outside the front door of the store. William Spiller, the responding officer, knew defendant and recognized him from the video. The People played the video footage for the jury.

Spiller arrested defendant and read him his *Miranda*[3] rights. Spiller then interviewed defendant. Defendant denied robbing the store; however, at some point during the interview he admitted he stole the glass case because he needed money. The audio recordings of Spiller's interviews with defendant were played for the jury.

Prior to trial, the People filed a trial brief seeking admission of defendant's statements to law enforcement during his interrogation. At the hearing, Spiller testified he had read defendant his *Miranda* rights which defendant indicated he understood. Defendant waived his right to remain silent and agreed to speak with Spiller. Defense

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

counsel indicated that "besides potential Miranda issues, I believe any statements, confessions, if you will, that were obtained from [defendant] were involuntarily taken."

Spiller testified he does not make false promises to people whom he interviews. He testified he did not make false promises of leniency to defendant in exchange for answers to his questions. The following colloquy regarding Spiller's interrogation of defendant took place at the hearing:

Defense Counsel: "Didn't you promise [defendant] that – I believe that the indication was – that this could be a misdemeanor?"

Spiller: "I did make that statement and I rused [*sic*] him."

Defense Counsel: "I'm sorry. What did you say, you rused [*sic*] him?"

Spiller: "It's a ruse, yes."

Defense Counsel: "Okay. So in other words, during that interview, you did, in fact, indicate to him that if he talked to you, who knows, this might very well be a misdemeanor; right?"

Spiller: "And I went down in that conversation and I said, I'm not promising you anything."

Defense Counsel: "So you're saying somewhere [in] that conversation that you weren't promising him anything?"

Spiller: "I wasn't promising him anything. I'm allowed to lie to someone during an interview."

The first portion of the audio recording of Spiller's interview with defendant was then played. The following colloquy occurs:

4

Spiller: "This isn't murder. The–all this is is just a simple–maybe even a theft, I can get it dropped down to a theft at best."

Defendant: "What's a theft?"

Spiller: "It's a misdemeanor."

Defendant: "Misdemeanor?"

Spiller: "Yeah, we can go across the street, book you in and they can give you a little cite out."

A little later, the dialogue continues:

Defendant: "If it's a misdemeanor, I'll do it. I'll take it."

Spiller: "We're not bargaining here. You're not–no, I don't want you to say yes just because yes."

Defendant: "No, because it's a robbery. You're trying to tell me I robbed this lady and I didn't rob her. That's a strike."[4]

Later, defendant states, "robbery, dude. I – I got one strike. I go to jail for four years, my minimum." Spiller responds: "I want–dude, I wanna help you out and I wanna help you out . . . ." Defendant continued to deny robbing the store or taking the property. Spiller later informed defendant, "Tell me the truth. At least we can do some leniency in my report." Defendant replied, "What's leniency in your report?" Spiller said,

---

**4** Spiller was dispatched to the scene of the theft with information that a robbery had occurred. There was apparently some indication of a struggle between Ducommun and defendant over the glass case. However, as the evidence adduced at trial indicates, defendant simply removed merchandise from the store and placed it on the ground when he realized he could not get away with it. Thus, the People never charged defendant with robbery.

"Leniency. I can write that you were honest and truthful with me [to] the district attorney." Defendant said, "Dude, they don't even [receive] that report." Spiller replied, "Yeah they do." Defendant said, "The cops think[] you should go lenient on [a suspect] because he told the truth and his girlfriend is pregnant. You think they're gonna give a fuck? . . . Nobody gives a fuck. Why am I gonna admit to anything. I'm already in jail in cuffs. Why would I say I did anything." Nevertheless, defendant admitted to taking property from the store in order to obtain money and buy his girlfriend things to make her happy.

In the second portion of the interview, which took place about 30 to 40 seconds after the first, as Spiller shortly left the interrogation room, defendant stated, "Yeah, I fucking stole it, man."[5] Spiller testified he did not know anything regarding defendant's criminal record prior to the interview. Defense counsel argued the confession was the involuntary result of Spiller's false promises of leniency.

The court observed, "There's an issue regarding leniency. I think that that's poor wording by Officer Spiller." However, noting defendant's lengthy criminal history, the court noted defendant "is sophisticated enough to see through that, know that that's probably not particularly helpful." The court opined that due to Spiller's ignorance of defendant's criminal history prior to the interview, Spiller could accurately have believed the theft would be a misdemeanor. The court ultimately found defendant's statements were knowing, voluntary, and admissible.

---

[5] The total length of both interviews together was 25 to 30 minutes.

During closing argument, the People stated, "Keep in mind one of the things [defendant] never did do. He never denied being in the store. He never denied being the person. He just hemmed and hawed a little bit about whether he actually took the box. He admits that he was there . . . ." Defense counsel objected contending the statement constituted *Griffin* error. The court overruled the objection.

The probation officer's report prepared in anticipation of sentencing noted defendant had a previous conviction in which he had been engaged in violent conduct which posed a danger to society, he had numerous prior adult convictions, his prior performance on post release community supervision was unsatisfactory, he was an active participant in the instant crime, and the monetary value of property stolen in this case was significant. Defendant had seven prior felony convictions, two prior misdemeanor convictions, and had been on community supervision at the time he committed the instant offense.

At the sentencing hearing, the court noted, "I have read and considered the 13-page probation officer's report . . . ." The court further observed defendant had a long criminal record which "consists of thievery throughout his life, . . ." The court mentioned the aggravating factors in the probation officer's report. The court struck the mitigating factors listed in the probation officer's report indicating he did not agree with them. The court imposed the upper term of three years on count 1 which was doubled pursuant to the prior strike conviction. The court imposed four consecutive one-year terms for each of the alleged prior prison terms.

7

DISCUSSION

We offered defendant an opportunity to file a personal supplemental brief, but he has not done so. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error and find no arguable issues. (*People v. Carrington* (2009) 47 Cal.4th 145, 174 [Informing a defendant that full cooperation might be beneficial and that punishment decisions were not in control of police officers not a promise of leniency rendering confession involuntary]; *People v. Rundle* (2008) 43 Cal.4th 76, 195, [Where prosecutor's statement is "at most, 'an indirect, brief and mild reference to defendant's failure to testify as a witness[,]' [citation][,]" the prosecutor does not suggest the jury should draw inference of guilt from defendant's testimony, and evidence is overwhelming, any error is harmless], disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22; *People v. Carmony* (2004) 33 Cal.4th 367, 375-376 ["[A]ny failure on the part of a defendant to invite the court to dismiss under section 1385 following *Romero*[6] . . . forfeits his or her right to raise the issue on appeal.]; *People v. De Soto* (1997) 54 Cal.App.4th 1, 8 ["'[C]omplaints about manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal.' [Citation.]"]; *People v. Black* (2007) 41 Cal.4th 799, 813 [One legally sufficient aggravating factor justifies imposition of the upper term].)

---

**6** *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

8

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON_____

J.

We concur:

McKINSTER_____

 Acting P. J.

RICHLI_____

 J.