Filed 10/17/14  P. v. Williams CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060134 |
| v. | (Super.Ct.No. FSB1300161) |
| JAMES AMBROSIA WILLIAMS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lorenzo R. Balderrama, Judge.  Affirmed.

Thomas Owen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant James Ambrosia Williams of child abuse (count 1; Pen. Code, § 273a, subd. (a)).[1] The jury also found true an allegation defendant personally inflicted great bodily injury on the victim, a child under the age of five (§ 12022.7, subd. (d)). The trial court found true allegations defendant had suffered a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), a prior serious felony conviction (§ 667, subd. (a)(1)), and two prior prison terms (§ 667.5, subd. (b)). The court sentenced defendant to an aggregate term of imprisonment of 22 years. On appeal, defendant contends the court erred in using the same factor to impose sentence on both the great bodily injury enhancement and the aggravated term on count 1. We affirm.

FACTUAL HISTORY

On December 28, 2012, S.W. allowed defendant, the father of one of her children, to take the victim (born 2011), another one of her children, for a week so that defendant could spend some time with the victim. Defendant said he was taking the victim to his aunt's house. When the victim left with defendant, he had no injuries other than a scratch on his head.

Defendant was supposed to bring the victim back on January 4, 2013, but failed to do so. S.W. called defendant's aunt who said defendant was not there. At some point, S.W. spoke with defendant who said he was going to keep the victim for another week. On January 7, 2013, Child Protective Services (CPS) called S.W. and told her the victim was in the hospital. S.W. went to the hospital to see the victim. At the hospital,

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

defendant informed her the victim had been burned on a space heater.

Defendant's girlfriend, S.C., testified defendant came to her apartment with the victim on December 28, 2012. They stayed with her for a week. When they first arrived, the victim had no discernible injuries. S.C. told detectives the victim's hand was burned on New Year's Eve. However, at trial she testified she believed the victim was injured on January 4, 2013.

S.C. testified she made fried tacos using a skillet and grease. After she ate, she went to lie down. Defendant was feeding the victim. She heard defendant telling the victim to finish his food. At some point, S.C. heard the victim scream. When she woke up the next day, she noticed the victim's hand was burned.

The victim's arm, from hand to shoulder, was swollen. When S.C. cleaned the burn, the skin came off the victim's arm. Defendant told her the victim had been burned by sleeping too closely to the space heater. S.C. told defendant to take the victim to the doctor. Defendant said he first had to find out if S.W. had an open CPS case; however, he could not call her because his cell phone was not working. They took the victim to the hospital three days later.

The victim was treated at the Arrowhead Regional Medical Center's burn unit on January 7, 2013. The victim had a bruise on his cheek. The victim had also sustained a burn to the back of his hand: "This is a full thickness third-degree burn, which means that the injury has basically taken the depths of the epidermis, the dermis, and down to the fat of the hand." "It just means that this is a very deep injury. Generally it's something you see with prolonged contact."

3

The victim "underwent surgical excision, which means we took him to the operating room and cut off all of the dead tissue . . . ." "[W]hen we debrided the burn [it] was actually [down] to the tendons on the back of his hand . . . [so] we had to stop because . . . we were not able to remove all of that tissue without getting into the tendons." On January 22, 2013, medical personnel were able to successfully complete a skin graft with tissue taken from the victim's thigh.

"[W]ith something that is this deep and the prolonged contact that would be needed to cause something like this, I can only imagine the pain at the time that this occurred[]" would be extreme. The pain was described as "excruciating" and a "ten out of ten." The victim was admitted to the hospital on January 7, 2013, and discharged 21 days later.

The injury was inconsistent with contact with a space heater. The injury would have had to occur "from a prolonged exposure to a flat, very hot surface." Holding a skillet on the victim's hand would be consistent with his injuries.

Defendant testified the victim had the bruise on his face the day defendant picked him up. The burn occurred around January 4, 2013. The victim was sleeping about a foot and a half from the space heater. The victim woke up crying. At first defendant thought the victim had sustained a spider bite; the wound was swollen, but did not look burned. However, defendant later determined it was a burn which must have come from the heater. Defendant treated the wound. Defendant told S.C. no one would believe the heater burned the victim. Defendant took the victim to the hospital on January 6, 2014, when his brother told him he should do so.

4

DISCUSSION

Defendant contends the court impermissibly imposed both the enhancement and the aggravated sentence on count 1 based on dual use of the fact that the victim sustained great bodily injury. We disagree.

"Although a single factor may be relevant to more than one sentencing choice, such dual or overlapping use is prohibited to some extent. For example, the court generally cannot use a single fact both to aggravate the base term and to impose an enhancement, nor may it use a fact constituting an element of the offense either to aggravate or to enhance a sentence. [Citations.]" (*People v. Scott* (1994) 9 Cal.4th 331, 350.)

"'[C]omplaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal.' [Citation.] 'Included [within the (forfeiture) doctrine] are cases in which the stated reasons allegedly do not apply to the particular case, and cases in which the court purportedly erred because it double-counted a particular sentencing factor, misweighed the various factors, or failed to state any reasons or give a sufficient number of valid reasons.' [Citation.]" (*People v. De Soto* (1997) 54 Cal.App.4th 1, 8.) "'Improper dual use of the same fact for imposition of both an upper term and a consecutive term or other enhancement does not necessitate resentencing if "[i]t is not reasonably probable that a more favorable sentence would have been imposed in the absence of the error."' [Citation.]" (*People v. Osband* (1996) 13 Cal.4th 622, 728.)

5

First, defendant forfeited the issue by failing to raise it below. Second, to the extent the court erred, we find the error harmless. The court expressly found the following aggravating factors in the instant case: the crime involved great bodily harm, the victim was highly vulnerable, defendant's prior convictions and sustained juvenile delinquency petitions were numerous and increasing in seriousness, and defendant's prior performance on probation and parole were unsatisfactory. The court did not find any circumstances in mitigation.

Here, the juvenile court had sustained four separate juvenile delinquency petitions alleging defendant had committed burglary, petty theft, robbery, attempted carjacking, and taking a vehicle without the owner's consent. The juvenile court had revoked defendant's prior grants of probation and parole. Defendant had incurred convictions as an adult for twice driving without a license, possession of a firearm by a prohibited person, burglary, and petty theft. Defendant was on misdemeanor probation when he committed the instant offense. The probation officer recommended a sentence of 24 years' imprisonment. The court struck imposition of punishment on defendant's two prior prison terms. On this record, there is no reasonable probability the court would have imposed a more favorable sentence absent its apparent reliance on defendant's infliction of great bodily injury. (*People v. Guitierrez* (1992) 10 Cal.App.4th 1729, 1735-1736 [Error harmless where "[o]ther aggravating circumstances, recited by the trial court, support the court's sentence choice."]; *People v. Black* (2007) 41 Cal.4th 799, 813 [One legally sufficient aggravating factor justifies imposition of the upper term.].)

6

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

RAMIREZ

P. J.

McKINSTER

J.

7