Filed 2/26/24  P. v. Washington CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DENNIS WASHINGTON, JR.,<br><br>    Defendant and Appellant. | F086574<br><br>(Kern Super. Ct. No. BF165786A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

James Bisnow, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Kari Mueller, Lewis A. Martinez, and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant appeals for the third time, challenging the trial court's reimposition of his prior sentence after we remanded for the court to exercise its newfound discretion under Senate Bill No. 567 (2021–2022 Reg. Sess.; Senate Bill 567) and Senate Bill No. 81 (2021–2022 Reg. Sess.; Senate Bill 81). We find no prejudicial error and affirm.

## BACKGROUND[1]

In an amended information filed January 27, 2017, the Kern County District Attorney charged defendant Dennis Washington, Jr. with attempted first degree murder of Janette D. (Pen. Code, §§ 664, 187, subd. (a);[2] 189, subd. (a); count 1), attempted first degree murder of James D. (§§ 664, 187, subd. (a); 189, subd. (a); count 2), shooting at an inhabited dwelling (§ 246; count 3), assault with a firearm on Janette D. (§ 245, subd. (b); count 4), assault with a firearm on James D. (*ibid.*; count 5), and possession of a firearm as a felon (§ 29800, subd. (a)(1); count 6). The information also alleged that all six counts were committed for the benefit, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)); during the commission of counts 1 through 3, defendant intentionally and personally discharged a firearm (§ 12022.53, subd. (c)); in the commission of counts 4 through 6, defendant personally used a firearm (§ 12022.5, subd. (a)) and personally inflicted great bodily injury (§ 12022.7, subd. (a).)[3]

Defendant's first trial ended in mistrial. After defendant's second trial, a jury convicted him on counts 4 and 6. The jury found the firearm (§ 12022.5, subd. (a)) and great bodily injury enhancements (§ 12022.7, subd. (a)) to count 4 true. The jury acquitted defendant on counts 1 and 3, as well as attempted voluntary manslaughter as a

---

[1] Much of the Background and Facts sections of this opinion are taken from our previous appellate nonpublished opinion in *People v. Washington* (May 12, 2020, F076340) (*Washington I*).

[2] All further undesignated statutory references are to the Penal Code unless otherwise noted.

[3] These two enhancements were later dropped as to count 6.

lesser included offense of count 1.  The jury found the gang enhancement allegation (§ 186.22, subd. (b)) not true as to counts 4 and 6.

The jury failed to reach a verdict on counts 2 and 5.  The jury also failed to reach a verdict on discharge of a firearm "in a grossly negligent manner" (§ 246.3) as a lesser included offense of count 3, and a mistrial was declared as to those counts.[4] The court sentenced defendant to the upper term of nine years on count 4, plus the upper term of 10 years for the gun enhancement (§ 12022.5), plus three years for the great bodily injury enhancement (§ 12022.7).  On count 6, the court sentenced defendant to a stayed (§ 654) term of three years.

## FACTS

Robert Tyo worked as a patrol officer for the Bakersfield Police Department on August 8, 2016.  Shortly after 9:00 p.m., Officer Tyo was called out to a shooting at an apartment complex on West Columbus Street in Bakersfield.  When Tyo arrived on scene, people were shouting and directing his attention to a particular upstairs apartment. Janette D. (Janette) was standing inside the apartment near the front door.  She appeared to have a gunshot wound to her right buttocks.  She was scared, crying and in pain. Janette told Tyo she had been shot by defendant.

Police found a shell casing in the courtyard.  Blood was found by a cement wall towards the inside of the courtyard.

### Janette's Trial Testimony

Janette was sitting on a brick wall at her apartment complex.  James D. (James) was standing with Janette.  Defendant came down a nearby flight of stairs.  James was "shock[ed]" to see defendant.  James made a motion with hands as if to say, " '[W]hat's up?' "  Defendant did not say anything and just walked away.  James was yelling and "talking shit" to defendant in a disrespectful manner.  James eventually began to shout

---

[4] These counts were later dismissed at the People's request, in the "interest of justice."

3.

gang slurs at defendant. James then said, " 'Westside' " to "rep" his gang. James also called defendant a "bitch" and said, " 'Westside stupid motherf[**]ker.' "

At one point, James pulled up his pants. Then he "faked like he was picking up something and putting it into his pants."[5] In reality, James had not picked up anything. Defendant came towards James with something in his hand, prompting James to duck.

Janette testified at trial that her "back was turned when the shot was fired," so she did not know who fired it. Janette admitted she recalled telling officers that defendant had shot her. However, Janette claimed she had been "getting beat on" by James, and that James had told her to say defendant was the shooter.

When asked if defendant identifies as an Eastside Crip, Janette testified, "Well, I don't know for sure. I just know that's the side of town that I know him from."

No more than one hour prior to this incident, defendant and James had gotten into a fistfight. The fistfight occurred near the bottom of the stairs to Janette's apartment. The two men were attempting to punch one another with closed fists. Defendant put James into a headlock, at which point Janette broke up the fight. Neither man pulled out a weapon during the fight.

**Subsequent Events**

Sometime after the shooting, Janette was walking with her five-year-old son when someone approached her. Janette had never seen the person before. The person asked Janette, " 'So what are you going to do?' " Janette understood the person to be asking whether she was going to testify about the shooting. Janette testified that she did not know how she responded to the woman or whether she felt scared.

---

[5] Janette admitted she had not mentioned James making the motion of "picking up air" until she had to testify in front of defendant. She never told one of the responding officers, Seann Woessner, that James had pretended to have a gun.

4.

Later, two men in a vehicle approached Janette while she was walking.  The men said, " 'What are you going to do?' "  Janette understood them to be asking whether she was going to testify about the shooting.  Janette became scared and took off running.

Later still, Janette received a phone call from someone with a male voice.  Janette recalled previously testifying that the person said, " 'If you testify, you become a snitch.  You snitch, you know what happens?' "  They also said, " 'You have a baby; right?' "  The call worried Janette because she considered it a threat towards her son.

When Janette learned of a subpoena to compel her testimony, she left the state.  She did not appear in court.  Janette claimed she left the state for a family event.

A second subpoena was handed directly to Janette.  Janette told the person who served the subpoena that she would not comply.  Indeed, Janette failed to appear in court a second time.  Janette was arrested for failing to appear in court.

She had previously testified that her failure to appear was because she was scared.  However, at trial, Janette claimed she was not scared.

### Officer Seann Woessner's Testimony

Officer Seann Woessner responded to the scene and observed Janette was crying and in pain.  Woessner asked Janette what happened.  She said "Dennis Washington" had shot her.  Janette said she did not know why defendant had shot her.  Janette said that defendant is an Eastside Crip, and that James is a member of the Westside Crips gang.

### Officer Dean Barthelmes's Testimony

Officer Dean Barthelmes interviewed Janette at Kern Medical Center.  Janette told Barthelmes that defendant shot her "as he was trying to shoot James" during an argument.

### Recovery of the Gun

Defendant was apprehended on September 29, 2016.  Eventually, he was placed in holding cell number 2 at the Bakersfield Police Department.  On November 7, 2016, a gun was found hidden in a chair in the holding cell.  Between September 26, 2016, and November 7, 2016, defendant and eight other people had been in the holding cell.

Forensic test-fire analysis indicated the recovered gun was the same one used to shoot Janette. DNA recovered from the gun was a highly likely match to defendant's DNA.

**Subsequent Procedural History**

As noted above defendant was convicted and appealed. In the nonpublished opinion in *Washington I*, *supra*, F076340, we affirmed the judgment but remanded for the trial court to exercise its discretion under Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill 620).

On remand, the court declined to exercise its discretion under Senate Bill 620 to strike the firearm enhancement.

Defendant again appealed, and in the nonpublished opinion in *People v. Washington* (Oct. 19, 2022, F081982) (*Washington II*), we accepted the Attorney General's concession that defendant needed to be resentenced again under Senate Bill 567.

On remand, the court declined to reduce the sentence previously imposed. Defendant now appeals again.

**Present Resentencing**

On remand from *Washington II*, the parties filed sentencing memoranda. In its memorandum, the People argued that defendant's prior convictions were numerous or escalating in severity (Cal. Rules of Court, rule 4.421(b)(2)) and that defendant was an upper term candidate. The People said they would prove defendant's prior convictions by certified records.

In his memorandum, defendant argued that his crime was committed because of an unusual circumstance, such as great provocation, that is unlikely to recur. (Cal. Rules of Court, rule 4.423(a)(3).) As for his criminal record, he emphasized that there was an eight-year gap between his juvenile adjudication and misdemeanor spousal abuse. His memorandum continued: "The statute provides for the imposition of the middle term unless aggravating factors are tried to a jury or admitted by the defendant. That was not

6.

done in this case. The exception to that is if the court has a certified copy of the rap sheet and determines [the] upper term is warranted based thereon. [Defendant] asks the court to impose the middle term in this case."

The sentencing memorandum also mentioned a series of traumatic events that occurred in defendant's childhood, but said the events were not being used to mitigate responsibility for the offense. Defendant acknowledged he had no medical evidence to submit supporting the trauma, nor any evidence to establish it played a role in the commission of his offense.

In a supplemental sentencing memorandum, defendant argued, "Not only does … [section] 1170[, subdivision] (b) apply to the substantive term, but it also applies to the enhancement. The stated reason for imposing the upper term on the gun enhancement was not tried to a jury or admitted by [defendant]. Based thereon, the court should impose midterm on the gun use enhancement."

At the resentencing hearing, the People sought to admit certified copies of defendant's rap sheet and two dockets and booking photographs. Defense counsel objected to the rap sheet on the grounds that it had not been admitted at the original sentencing hearing. Defense counsel later objected to the booking photograph and dockets on the grounds that he did not "believe they should be admitted into evidence at this stage." The People argued that "the statute" allowed for the court to consider the documents.

The court sustained defense counsel's objection to the sheriff's department mugshot profile, but admitted the rap sheet, and dockets.

Defense counsel argued: "[U]nder [section] 1170, the reason given for imposing the upper term on the enhancement is not something that the Court can now consider and – and the case law seems to indicate that when you're dealing with a gun enhancement, the behavior has to relate in some manner to that enhancement, and I believe there is

none in this particular case that has been either proven to a jury or admitted by my client. Therefore, I think the midterm on the gun enhancement is the appropriate sentence."

The court declined to alter the prior sentence, which included an upper term sentence on the section 12022.5 enhancement. In its ruling, the court stated,

> "I agree with the defense assessment on what the Court can and can't consider, but one is that prior convictions are numerous. We have at least two prior convictions as an adult. We have proof now before the Court which has been objected to, but agree with Ms. Antonios's argument that the People have to have some ability to correct in a limited fashion the record which was not created because the law didn't require it. And the Court could proceed based upon the probation department's report in making certain determinations that the defendant was on felony probation when the crime was comitted, and, of course, the Court can find with that that his prior performance on probation was unsatisfactory in that he reoffended because this new crime was committed while he was on his two probations. So I think the Court can find all three factors in aggravation."

The court reimposed defendant's prior sentence.

## DISCUSSION

### I. Error under Section 1170 Was Harmless

The Attorney General argues that the court's reliance on certified records was, at most, harmless state law error. We agree.

Generally, courts must impose the lower or middle term in a sentencing triad for an enhancement. (§ 1170.1, subd. (d)(1).) "The court may impose a sentence exceeding the middle term only when there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (*Id.*, subd. (d)(2).)

However, when sentencing on a substantive crime, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of

8.

conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) This exception does not apply to enhancements. (*Ibid.*)

Circumstances in aggravation include (1) the "defendant's prior convictions as an adult or sustained petitions in juvenile delinquency proceedings are numerous *or* of increasing seriousness"; (2) the defendant has served a prior term in prison; (3) defendant was on probation, mandatory supervision, postrelease community supervision, or parole when the crime was committed; and (4) the defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory. (Cal. Rules of Court, rule 4.421(b).)

Circumstances in mitigation include that "[t]he crime was committed because of an unusual circumstance, such as great provocation, that is unlikely to recur." (Cal. Rules of Court, rule 4.423(a)(3).)

The federal constitution requires that some circumstances in aggravation be tried to a jury. (See *Cunningham v. California* (2007) 549 U.S. 270, 288–293.) However, the federal Constitution does not grant the right to a jury trial on aggravating circumstances relating to prior convictions and recidivism. (See *Almendarez-Torres v. United States* (1998) 523 U.S. 224, 243–247; *People v. Black* (2007) 41 Cal.4th 799, 818.)

Here, the court relied on aggravating circumstances relating to prior convictions and recidivism to sentence defendant to the upper term on the firearm enhancement. Consequently, while defendant has a right to a jury or court trial here, that right arose from state statute (§ 1170.1, subd. (d)(2)) and is therefore subject to article VI, section 13 of the California Constitution. That provision prohibits reversal of judgments unless a miscarriage of justice has occurred. (Cal. Const., art. VI, § 13.)

We find no prejudice here.[6] The prosecutor offered defendant's certified rap sheet and dockets from prior cases into evidence. Defendant was able to successfully object to

---

[6] The Attorney General contends defendant forfeited his argument. Because we conclude any error was harmless, we do not reach this contention.

other evidence proffered by the prosecution, but ultimately was unable to overcome the obviously damning certified records. Defendant offered no evidence suggesting these documents were falsified or that they referred to a different person. There is no reason to believe anything different would have occurred had the court conducted a "court trial." Indeed, what occurred here was functionally similar to a court trial – evidence was introduced, and the court made a decision thereon. In any event, we are thoroughly convinced that no reasonable court or jury could arrive at any conclusion other than defendant had suffered "numerous" (Cal. Rules of Court, rule 4.421(b)(2)) prior convictions. Therefore, the failure to submit the issue to a jury was harmless in the present circumstance.

Defendant argues that applying harmless error analysis to the type of error presented here would read the statute "out of existence." He contends that "[i]t would mean that in any case this Court requires a remand pursuant to … section 1170.1(d)(2), as here, the trial court may simply reimpose the upper term without requiring the prosecution to follow the statute." But the entire purpose of article VI, section 13 is to render certain errors inconsequential. Thus, defendant's argument is essentially one against California Constitution article VI, section 13 itself – a provision we are powerless to ignore.

## II. The Court Did Not Err in Declining to Strike an Enhancement under Section 1385

Defense counsel also argued below that the court should strike one of his enhancements under section 1385. As noted above, the court did not accept this argument and instead reimposed defendant's prior sentence. Defendant contends on appeal that this was error.

Under section 1385, a court may order an action dismissed. (§ 1385, subd. (a).) For any enhancement that can be dismissed under subdivision (a), the court may instead

strike the additional punishment for the enhancement in furtherance of justice. (*Id.*, subd. (b)(1).)

If it is "in the furtherance of justice to do so," the court "shall" dismiss an enhancement unless prohibited by initiative statute. (§ 1385, subd. (c)(1).) In exercising this discretion, the court must consider and afford great weight to evidence of mitigating circumstances enumerated in subdivision (c)(2)(A) through (I). (*Id.*, subd. (c)(2).) If defendant proves one or more of the mitigating circumstances, it "weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (*Ibid.*) " 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (*Ibid.*)

" ' "A court's discretionary decision to dismiss or to strike a sentencing allegation under section 1385 is" reviewable for abuse of discretion.' [Citation.] 'In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " [Citation.] Second, a " 'decision will not be reversed merely because reasonable people might disagree. "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " [Citation.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.' " (*People v. Pearson* (2019) 38 Cal.App.5th 112, 116.)

### Background

At resentencing, the prosecutor emphasized defendant's criminal history in showing he endangers public safety. The prosecutor also asserted that defendant had rule

violations while in prison, including fights in 2017 and 2018; battery on another inmate in 2018, and "flight" in 2019.

Defense counsel offered certificates showing defendant had completed courses in "Adult Basic Education One and Two" and "New Direction Self-Improvement" offered by the Department of Corrections. She also contended that under section 1385, the court was required to dismiss one of the enhancements because there were multiple enhancements, and the sentence would be over 20 years. (See § 1385, subd. (c)(2)(B)–(C).)

The court observed that defendant was prone to resolve disputes through the use of physical force, whether by "nonweapons or by the use of a firearm." The court also noted that defendant had numerous rule violations in prison, which was a factor in the court's substantial danger determination.[7] The court further stated that defendant was able to essentially smuggle a firearm into the interrogation, which shows "a level of sophistication and dangerousness."[8]

The court concluded, "With everything before me, [defendant] is a danger. I'm not inclined to grant him any leniency. If any further discretion is given me to resentence him, I would not exercise any leniency unless it is compelled upon this Court by statutory authority." The court then reimposed defendant's prior sentence.

*Analysis*

Defendant contends that there were two mitigating circumstances present here: multiple enhancements and enhancements causing a sentence over 20 years. (See § 1385,

---

[7] The court stated this was not the "persuading factor" but was one the court "would consider."

[8] Again, the court said this was not the persuading factor "but it is a fact that if I am permitted to consider, I want to have it on the record."

subd. (c)(2)(B)–(C).)  Consequently, the court could only decline to dismiss the enhancement if the "public safety" exception applied.[9]

A court need not strike an enhancement, even in the face of mitigating circumstances, if it "finds that dismissal of the enhancement would endanger public safety."  (§ 1385, subd. (c)(2).)  " 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."  (*Ibid*.)

As noted above, the court did find defendant to be a danger.[10]  Defendant contends that while he was undoubtedly dangerous in 2016, "no evidence showed that two decades later he would present the same danger, or any danger, to the community."  This contention belies the obvious reasoning that if someone is dangerous one day, it raises a reasonable inference they will be dangerous the next day.  And when someone shows an extended history of dangerousness, as defendant has here, the inference is even stronger that the dangerousness will continue well into the future.  In other words, the evidence of past and present dangerousness *is* the evidence of the future dangerousness.  How else could future dangerousness be assessed?  As with any prediction of future conduct, the only option courts have is to take present and past circumstances and make reasonable

---

[9] In order to avoid a split in authority that will presumably be resolved in *People v. Walker* (2022) 86 Cal.App.5th 386, review granted March 22, 2023, S278309, we will briefly accept this proposition solely for the argument's sake.  Because we conclude defendant would still not be entitled to reversal, we need not delve into that split of authority.

[10] Defendant suggests that this finding was different than whether he would be dangerous *in the future* at the time he was released if the enhancement were dismissed.  But the court made these comments in the context of its ruling on the section 1385 request.  We have no reason to think the court did not understand the nature of the dangerousness inquiry provided by that statute.  The fact that the court did not expressly clarify the timeframe of its dangerousness inquiry does not establish a lack of understanding as to the nature of its discretion.

extrapolations thereon.  By definition, these extrapolations cannot be proven to a certainty, but that does not make them improper.

## DISPOSITION

The judgment is affirmed.

POOCHIGIAN, J.

WE CONCUR:

HILL, P. J.

PEÑA, J.

14.