Filed 6/26/25  P. v. Correa CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CHRISTINA GLORIA CORREA,<br><br>    Defendant and Appellant. | E084425<br><br>(Super.Ct.No. FVI23003813)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Daniel W. Detienne, Judge.  Affirmed.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Donald W. Ostertag and Robin Urbanski, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted defendant and appellant Christina Gloria Correa of voluntary manslaughter (Pen. Code, § 192, subd. (a)[1]) for the stabbing death of a family friend and found true the personal use of a knife allegation (§ 12022, subd. (b)(1)). The trial court sentenced her to prison for a total term of seven years, consisting of a six-year midterm for the offense, plus one year for the enhancement. On appeal, she contends the court abused its discretion in finding her ineligible for the presumptive low term sentence (§ 1170, subd. (b)(6)(A)(C)), in weighing the various sentencing factors, and in failing to dismiss the enhancement (§ 1385, subd. (c)(2)(E)). We affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

On December 11, 2023, defendant, her father, and family friend Charles Malone (the victim) were drinking at defendant's father's home.[2] Eventually, defendant went to the master bathroom to take a bath. The victim entered the bathroom, and defendant yelled at him to get out. She got out of the tub and pushed him; he hit her in the head. The two fell to the floor; the victim held defendant down and "started like doing stuff to [her] that [she] didn't like." He grabbed her by the throat and "choked" her, then began "grinding" on her and "nibbling on [her] breast."

Defendant's father entered the bathroom and yelled at the victim to leave. Defendant was "really, really mad"; she went to the kitchen, grabbed two knives, keeping a thin long knife to "scare" the victim, stabbed furniture on her way toward him, and then

---

[1] Unlabeled statutory references are to the Penal Code.

[2] Audio recordings of defendant's statement and her father's statement to detectives were played for the jury; transcripts were also provided.

2

stabbed him in the chest when he was at the door that goes outside to the garage; her father was standing between the two. The victim left, and defendant went to a neighbor's house and called 911. When asked why she stabbed the victim, she stated, "I don't know. Well, cuz I wanted him to leave and I was mad, and I needed him to leave, and he was scaring me. I needed him to leave." The victim later died.

Defendant denied any sexual relationship with the victim prior to that night. The investigation at defendant's father's home revealed knives missing from the knife block in the kitchen, punctures through the fabric of living room furniture, blood in various places, and a long knife with blood on the tip. Defense counsel argued defendant acted in self-defense.

After approximately 23 hours of deliberations, the jury convicted defendant of voluntary manslaughter (§ 192, subd. (a)) and found she personally used a knife (§ 12022, subd. (b)(1)). Separately, the trial court found true both aggravating circumstances: the crime involved great violence, great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness, and defendant was armed with or used a weapon. (§ 1170, subd. (b)(2).) Defendant was sentenced to a total term of seven years in state prison.

## II. DISCUSSION

Defendant contends the trial court abused its discretion by refusing to impose the low term and strike the weapon enhancement in light of mitigating circumstances and the lack of any danger to the public if she was released early. We disagree.

3

*1. Further background information.*

*a. Defense sentencing brief.*

Defendant's sentencing brief requested probation or the low term pursuant to section 1170, subdivision (b)(6). Counsel argued "the sexual abuse [defendant] experienced during childhood caused long-term consequences psychologically, including an effect on her stress tolerance, anxiety, depression, . . . dissociative behavioral systems," and an inability "to feel safe," which led to her stabbing the victim "after he refused to leave her home." Counsel asserted defendant's history of abuse mandated the presumptive low term for the voluntary manslaughter. (§ 1170, subd. (b)(6).)

Turning to the aggravating factors, defense counsel argued the offense was not distinctively worse than other voluntary manslaughters because defendant stabbed the victim one time. Regarding the factors in mitigation, counsel noted that the victim was the initial aggressor, the crime was committed under the unusual circumstance of great provocation, defendant took other actions to get the victim to leave before stabbing him "only once," she had a minimal prior record, she had experienced childhood trauma, and she acknowledged her wrongdoing early on by calling 911 and agreeing to speak with law enforcement officers. Counsel offered a report prepared by a Social Service Practitioner with the San Bernardino County Public Defender's Office. In an interview, defendant stated an uncle had sexually molested her when she was seven years old, her boyfriend had raped her when she was 23 years old, and the victim physically and sexually assaulted her when he entered the bathroom while she was taking a bath, refused

4

to leave, struck her in the face, and grappled her to the floor. The social worker observed that "[c]hildhood sexual assault directly impacts many long-term psychological consequences, internalizing and externalizing behavioral symptoms, increased revictimization, and substance abuse" (which defendant also suffered from).

*b. Prosecution's sentencing brief.*

In their sentencing brief, the People discussed two aggravating factors: "(1) the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; [and] [¶] (2) [d]efendant was armed with or used a weapon at the time of commission of the crime." As to the mitigating factors noted by defense counsel, the People asserted other evidence contradicts defendant's claim of what happened. Specifically, her claim that the victim sexually assaulted her is uncorroborated, defendant admitted she played pranks/games with the victim, and he was standing by the exit when defendant stabbed him. However, the People agreed that defendant had virtually no prior record and she called 911, admitting she stabbed the victim. With respect to the psychosocial report, they argued the social worker's conclusions were premised upon assumptions regarding how the incident occurred, but she could not reasonably draw a connection between defendant's prior abuse and her stabbing of the victim. The People took issue with the claim that defendant's intimate partner violence and childhood trauma ("super-mitigant" factors) required a low term. They asserted defendant "unnecessarily brought lethal force to [the victim]" despite having the opportunity to leave, and there was "zero evidence

5

proffered at trial that [her] past experiences were a direct contributing factor as to why she stabbed and killed the [v]ictim." Thus, they maintained a low term sentence would be contrary to the interests of justice.

   *c. The sentencing hearing.*

   After reviewing the probation report and sentencing briefs, the trial court asked the parties to address the "mandatory low term under [section] 1170[, subdivision] (b)(6)," and whether the enhancement should be dismissed. Regarding section 1170, subdivision (b)(6), the prosecutor argued the court should start at the middle term because there was no testimony at trial, nor from the social worker's report, to establish a connection between defendant's history of abuse and commission of the crime. With respect to section 1385, subdivision (c)(1)'s directive to dismiss an enhancement if it is in the furtherance of justice, the prosecutor reasoned defendant deliberately chose her weapon with the intent to stab the victim; however, if the court dismisses the enhancement, the personal use also justifies an upper term.

   In response, defense counsel maintained section 1170, subdivision (b)(6), required imposition of the low term due to the correlation between defendant's super-mitigant factors and this case. She noted the social worker was present for the court to question about such correlation. Counsel also argued the mitigating factors outweighed the aggravating factors because this voluntary manslaughter (involving one stab wound from a woman attacked in her home by a family friend) was not "distinctively worse" than other voluntary manslaughters. Regarding the personal use enhancement, counsel

6

requested it be dismissed in the interests of justice because her absence will cause a hardship on her family. In rebuttal, the People asserted defendant's voluntary manslaughter was "distinctively worse" than others because she used a deadly weapon.

The trial court rejected the presumptive low term sentence after finding the aggravating factors outweighed the mitigating ones. The court explained: ". . . Again, someone died. Someone was stabbed to death and that person bled out in a parking lot of a drug store.

"So that takes me to [the] low middle term or upper term. As I mentioned, that's either 3, 6 or 11. There's been quite a bit of talk about the aggravating factors. I found two true. One was the aggravating factor that it involved great violence and great bodily harm. So just some comments on that. I went back and read the [CALCRIM No. 3224], and the phrase that we're all talking about with this aggravating factor is that 'you may not find the allegation true unless all of you agree that the People have proved the defendant's conduct was distinctively worse than an ordinary commission of the underlying crime.' So there's been a lot of discussion about that. In the commentary of that CALCRIM it says, 'The committee is aware of [*Johnson v. United States*], a U.S. Supreme Court case, 2015 case, 576 U.S. 591, in which the U.S. Supreme Court held that determining what constitutes an ordinary violation of the criminal statute may constitute a constitutional vagueness problem.' Which is the problem I'm having with it. 'Nevertheless, in light of California law, that has never been disapproved. The committee has elected to include in the instruction the state law requirement that an

7

aggravating factor may not be found to be true unless the defendant's conduct was distinctively worse than an ordinary commission of the underlying crime.'

"So I think I made a comment that what's an ordinary voluntary manslaughter look like?

"[Defense counsel], if you look at it, okay, whatever that is, and I can see why the U.S. Supreme Court would say there's a vagueness issue there, but whatever it is, [defense counsel] has said if she had stabbed him numerous times, that would be an example of it being distinctively worse. [The prosecutor] mentioned that you can kill somebody, commit a voluntary manslaughter without using a weapon. So this makes this, use of a weapon, this stabbing, . . . distinctively worse. I mention that perhaps the way to look at it is the underlying crime is stabbing someone with a knife. That's the underlying crime. There could be a lot of things that could happen as a result of that. She could have been found not guilty. She could have been—if he hadn't died, it would have been a 245. It could have been an involuntary manslaughter, it could have been a voluntary manslaughter, it could have been a second degree murder, it could have been a first degree murder.

"So let me just—I don't, you know, know exactly, you know, what the right interpretation of that is, but it could be moot, [defense counsel], right? Because you only need one aggravating factor to give someone the upper term. It also would be moot if I don't give her the upper term and it's not even an issue. So let's see what happens, but that's my thoughts on that.

8

"So between the low and the middle and the upper term, there's the one involving great violence and great bodily harm [California Rules of Court, rule 4.421(a)(1)]. So putting that aside, there's the other one that the court found true, which was the armed with or used a weapon [California Rules of Court, rule 4.421(a)(2)]. That was found true by the court. As I mentioned, the aggravating or the mitigating factors are in [California Rules of Court, rule] 4.423. But what the court is going to do in this case, I don't think the low term is appropriate, and given the mitigating factors in this case that the parties— that [defense counsel] has talked about, I'll just mention some of them, no prior record, unusual circumstances, unlikely to reoccur, great provocation, I do believe legally the appropriate sentence in this case would be mid term. Not the low term, not the upper term, but the mid term. Do I give her six years or seven? Do I dismiss the enhancement or add that? That's under 1385. 'The court shall dismiss it if it's in the furtherance of justice.' That's in the court's discretion. 'The court is to give great weight to the mitigating circumstances unless it endangers public safety,' and that's defined as dismissal would result in physical injury or serious danger to others.

"Looking at the case of [*People v. Gonzalez*], a recent case of 2024, 103 Cal.App.5th at [215]. That's a case where the court has to look at the danger to public safety when [defendant] gets released. Not now, but when she gets released. And in this case she was found guilty of voluntary manslaughter. So as I said before, obviously the jury took into account what happened that night before the stabbing, they also took into account that she walked up to someone, stabbed an unarmed person in the

9

chest, and that person died, so I think it would endanger public safety for the court to dismiss that, and the court declines to dismiss the one-year enhancement, and the sentence will be seven years in state prison."

> 2. *Applicable law and standard of review.*

The trial court's sentencing process is governed in part by section 1170, which specifies three possible terms, low, mid, and high. (§ 1170, subd. (b).) On January 1, 2022, amendments to section 1170, subdivision (b), took effect. (See Sen. Bill No. 567 (2021-2022 Reg. Sess.), Stats. 2021, ch. 731, § 1.3.) As relevant here, section 1170, subdivision (b)(6)(A) and (C), establishes a presumption in cases in which the defendant "has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence" or "was a victim of intimate partner violence," and that trauma was "a contributing factor in the commission of the offense," the court "shall" impose the lower term. (See *People v. Salazar* (2023) 15 Cal.5th 416, 419.) The court must impose the lower term unless it finds "the aggravating circumstances outweigh the mitigating circumstances [such] that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6); see *Salazar*, at pp. 419, 423.)

In imposing a sentence, the trial court "may not impose an upper term by using the fact of any enhancement upon which sentence is imposed" (§ 1170, subd. (b)(5)), but "[o]nly a single aggravating factor is required to impose the upper term . . . ." (*People v. Osband* (1996) 13 Cal.4th 622, 728). The court's sentence is ultimately reviewed under

the abuse of discretion standard. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847 [a trial court's discretion "must be exercised in a manner . . . that is consistent with the letter and spirit of the law"].) "To prove an abuse of discretion, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."' [Citation.] To meet this burden, the defendant must 'affirmatively demonstrate that the trial court misunderstood its sentencing discretion.'" (*People v. Lee* (2017) 16 Cal.App.5th 861, 866.)

> *3. Analysis.*
>
> *a. Imposition of the middle term for voluntary manslaughter.*

Defendant contends the trial court ignored her intimate partner violence and childhood trauma and failed to apply the statutory presumptive low term. Alternatively, she contends the record does not support the court's finding that the aggravating factors outweighed the mitigating ones to support imposition of the middle term. As we explain, we reject her contentions.

Here, the trial court accepted section 1170, subdivision (b)(6)'s mandate to impose the low term in cases of intimate partner violence and childhood trauma, but noted an exception where "there's a finding that the aggravating circumstances outweigh the mitigating circumstance, such that the imposition of the low term would be contrary to

11

the interest of justice." According to the court, the facts in this case presented such exception. (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765 [recognizing the mere fact a defendant has suffered past trauma is insufficient for a presumptive low term under the statutory text; instead, the trauma must be a contributing factor in the commission of the offense]; *People v. Banner* (2022) 77 Cal.App.5th 226, 241 [same].) We agree.

As the People point out, the only evidence of defendant's prior trauma came from the social worker's report describing her reported childhood trauma and intimate partner abuse. However, the record is void of any evidence the trauma substantially contributed to her offense.[3] Absent such evidence, the court could appropriately decline to give the reported trauma substantial mitigating weight.[4] Nonetheless, the court acknowledged defendant's prior trauma and the mitigating circumstances—the crime occurred under unusual circumstances and defendant had virtually no prior record. After weighing the

---

[3] According to defendant, the social worker's report "clearly established a connection between [her] impulsive response to being sexually assaulted and her prior sexual assault history." However, an impulsive act involves doing something "suddenly without any planning and without considering the effects they may have." (<https://dictionary.cambridge.org/dictionary/english/impulsive> [as of June 23, 2025].) Here, defendant did not stab the victim in the bathroom. Rather, she left the bathroom (presumably after he was no longer holding her to the ground), went to the kitchen, looked for a specific knife, stabbed furniture on her path toward him, reached around her father, and then stabbed the victim when he was at the door that leads to the garage.

[4] The trial court did not discuss the correlation between defendant's childhood trauma and her offense. Rather, the court stated: "Mandatory low term under [section] 1170[, subdivision] (b)(6), there has to be childhood trauma. You have to be a youth or the victim of intimate partner violence or human trafficking. So we had some discussions about the intimate partner violence here. There's another part of that which is the court, if one of those exist, has to give low term, unless there's a finding that the aggravating circumstances outweigh the mitigating circumstances, such that the imposition of the low term would be contrary to the interest of justice."

12

competing factors, the court found the statutory presumptive low term inapplicable. Nothing in the record shows this sentencing decision was irrational, arbitrary, or amounted to an abuse of discretion.

Having rejected the presumptive low term, the trial court was tasked with deciding whether to impose the low, middle, or upper term. Previously, the court found true the aggravating factors that (1) the crime involved great violence and great bodily harm, and (2) defendant was armed with or used a weapon. Defendant asserts the court erred in finding the victim's death involved great violence and great bodily harm because it "relied solely on the mere fact that [he] was killed." Citing *People v. Black* (2007) 41 Cal.4th 799, 877, she argues "[a]n 'aggravating circumstance' is a fact that makes the 'offense distinctively worse than ordinary.'" She claims her voluntary manslaughter was not distinctively worse than other voluntary manslaughters because (1) she tried to minimize the amount of violence by throwing things at the victim while screaming at him to leave, (2) she grabbed the knife and stabbed the furniture—akin to a warning shot— before stabbing him "once" after he sexually assaulted her, and (3) she called 911 and waited for the police to arrive. According to defendant, the court's weighing process was flawed because the aggravating factors it identified did not demonstrate the low term was contrary to the interests of justice. We are not persuaded.

Here, the trial court acknowledged the mitigating factors, specifically mentioning "no prior record, unusual circumstances, unlikely to reoccur, [and] great provocation," but concluded the aggravating factors—great violence and great bodily harm and armed

13

with or used a weapon—outweighed them. The court noted that "someone died. Someone was stabbed to death and that person bled out in a parking lot of a drug store."[5] Defendant's argument amounts to nothing more than a challenge to the court's weighing process. She invites us to decide that the mitigating factors outweighed the aggravating factors found by the court. We decline her request. "'[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.'" (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) Such is the case before us. In short, the finding that the aggravating factors outweighed the mitigating factors is not so unreasonable a conclusion that it amounts to an abuse of discretion.

    *b. Imposition of one-year use of weapon enhancement.*

    Defendant contends the trial court abused its discretion under section 1385 by declining to dismiss the one-year enhancement for personally using a knife. Also, she argues the court violated the rule prohibiting dual or overlapping use of a fact when it relied on the personal use aggravating factor to impose the middle term, rather than the low term.

---

    [5] Defendant argues the fact that the victim died after bleeding out in the parking lot from his stab wound does not make the offense distinctively worse than other voluntary manslaughters. However, she discounts the fact that she chose to use a deadly weapon upon an unarmed victim who was no longer a threat to her as evidenced by the fact that her father stood between the two, and the victim was at the door that leads to the garage.

*1. Dismissal of enhancement under section 1385.*

Under section 1385, subdivision (c)(1), a "court shall dismiss an enhancement if it is in the furtherance of justice to do so." Under section 1385, subdivision (c)(2)(E), the court must "consider and afford great weight to evidence offered by the defendant to prove that . . . . [t]he *current offense* is connected to prior victimization or childhood trauma." (Italics added.) Defendant asserts "there is no evidence in the record that the court gave great weight in favor of dismissing the enhancement in light of the strong mitigating evidence, particularly the presence of two super mitigant[ factor]s, or that the dismissal of the enhancement would result in physical injury or other serious danger to others." We disagree.

First, as we previously observed, section 1385 does not require the trial court to dismiss an enhancement even if it finds a mitigating factor exists. Instead, the statute directs the court to "afford great weight to evidence offered by the defendant to prove" the mitigating circumstance is present. (§ 1385, subd. (c)(2).) The court complied with that standard when it stated, "'The court is to give great weight to the mitigating circumstances unless it endangers public safety,' and that's defined as dismissal would result in physical injury or serious danger to others. [¶] Looking at the case of [*People v. Gonzalez, supra*], 103 Cal.App.5th at [page 215]. That's a case where the court has to look at the danger to public safety when [defendant] gets released. Not now, but when she gets released. And in this case she was found guilty of voluntary manslaughter. So as I said before, obviously the jury took into account what happened that night before the

15

stabbing, they also took into account that she walked up to someone, stabbed an unarmed person in the chest, and that person died. So I think it would endanger public safety for the court to dismiss that, and the court declines to dismiss the one-year enhancement."

Next, the evidence in this case did not firmly satisfy the standard in section 1385, subdivision (c)(2)(E). As described by defendant, the evidence before the trial court was that she was sexually molested by her uncle when she was seven years old and raped by her boyfriend when she was 23. While this evidence may be sufficient to demonstrate she suffered intimate partner violence and childhood trauma, this fact alone does not qualify as a mitigating circumstance under section 1385, subdivision (c)(2)(E), which requires a finding that "[t]he *current offense* is connected to . . . childhood trauma." (Italics added.) The statute provides that the court may find such connection "if, after reviewing any relevant and credible evidence, . . . the court concludes that the defendant's childhood trauma substantially contributed to the defendant's involvement in the commission of the offense." (§ 1385, subd. (c)(6)(A).) Defendant fails to identify any evidence in this record that demonstrates her childhood trauma "substantially contributed" to her stabbing the victim when he was no longer a danger to her because he had walked away, he was at the door that goes outside to the garage, and her father stood between them. Some evidence of a connection between the childhood trauma and the current crime was required here.

The trial court explicitly acknowledged defendant had suffered trauma—which demonstrates the court did consider the trauma evidence—but concluded that dismissal of

16

the personal use enhancement would endanger public safety. (§ 1385, subd. (c).) That conclusion reflects a determination her trauma was not connected to her crime.

    *2. Imposition of the middle term under section 1170, subdivision (b)(6) does not implicate prohibition against dual use of aggravating sentencing factors.*

    When a statute specifies three possible terms, the trial court shall impose a sentence not to exceed the middle term, unless there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial. (§ 1170, subd. (b)(1), (2); Cal. Rules of Court, rule 4.420(a), (b).) Although a single fact may be relevant to more than one sentencing choice, the dual or overlapping use of an aggravating sentencing factor is prohibited in certain circumstances. (*People v. Scott* (1994) 9 Cal.4th 331, 350; *People v. Moberly* (2009) 176 Cal.App.4th 1191, 1197.)

    Here, the trial court selected the middle term for the voluntary manslaughter conviction, citing defendant's use of a weapon, and that the crime involved great violence and great bodily harm. Defendant argues that "[w]hen the court declined to impose the presumptive low term, the finding of both aggravating factors was not moot, particularly because the court cannot use the weapon factor both to impose the weapon enhancement and to decline to impose the presumptive low term." In response, the People contend "[n]othing in section 1170, subdivision (b)(b) prevents the trial court from using the same

fact to determine that aggravating circumstances outweigh mitigating circumstances such that the low term is contrary to the interests of justice and to also impose an enhancement."

Here, defendant failed to show she qualified for the presumptive low term under section 1170, subdivision (b)(6)(A) and (C); thus, the standard middle term presumptively applied instead. (*People v. Hilburn* (2023) 93 Cal.App.5th 189, 204-205 [Under the amended statute, the low term is presumed only if the sentencing court first finds the defendant falls into one of the three special categories set forth in § 1170, subd. (b)(6) and, second, finds that circumstance was a contributing factor in the commission of the offense.].) In sentencing defendant to the middle term, the trial court was not required to apply any aggravating circumstances. (*Hillburn*, at pp. 204-205; see *People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 929 [holding § 1170, subd. (b)(6), does not require aggravating circumstances to be proven to a jury beyond a reasonable doubt and declining "to import [the subdivision (b)(1) and (2)] requirement into section 1170, subdivision (b)(6) as a prerequisite to imposing the middle term"].) Accordingly, the prohibition against dual use of aggravating sentencing factors was not implicated.

## III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

CODRINGTON
J.